359 P.2d 400

**Leona M. ASHTON, Appellant and Cross-Appellee,**

**v.**

**J. R. ASHTON, Appellee and Cross-Appellant.**

**No. 6652.**

Supreme Court of Arizona.

Feb. 9, 1961.

Rehearing Denied March 14, 1961.

Evans, Kitchel & Jenckes, Phoenix, for appellant and cross-appellee.

Moore & Romley and Robert H. Green, Phoenix, for appellee and cross-appellant.

JENNINGS, Justice.

This appeal involves the interpretation and application of a property settlement agreement entered into by Leona M. Ashton, plaintiff below (hereinafter called "Appellant") and J. R. Ashton, defendant below (hereinafter called "Appellee").

The agreement (hereinafter called Property Settlement Agreement) made part of a judgment and divorce decree rendered September 18, 1954, reads in part:

"In computing the amount to be paid by First Party to Second Party as specified in sub-paragraph 2 of Paragraph 1 hereof, First Party and Second Party and their respective counsel appraised at $15,000.00 the interest and equity of First Party and Second Party in the following corporations, viz: Aztec Homes, Inc., Butterfly Homes, Inc., Copperhead Homes, Inc., Devil-

head Homes, Inc., Eagle Homes, Inc., Flatrock Homes, Inc., Goldenrod Homes, Inc., Hummingbird Homes, Inc., Ironside Homes, Inc. and Jasmine Homes, Inc. By the terms and provisions of this Property Settlement Agreement First Party becomes the absolute owner of the entire interest and equity of First Party and Second Party in said corporations, and Second Party acknowledges First Party's right at any time to sell said interest and equity in any manner and at such prices as he shall deem reasonable without any obligation whatsoever to Second Party; however First Party expressly agrees that as of January 1, 1957 a determination of the value as of that date of said interest and equity in said corporations shall be made by Robert A. Becker whose said determination in that respect shall be final, binding and conclusive on both First Party and Second Party. If said interest and equity as determined by Robert A. Becker shall exceed the sum of $15,-000.00, First Party shall pay to Second Party fifty per cent (50%) of the difference between $15,000.00 and the amount of said determination, said payment to be made in equal monthly instalments without interest payable on the 1st day of each month, commencing February 1, 1957 and ending September 1, 1964; provided, however, that if First Party shall have sold said interest and equity prior to January 1, 1957 he shall pay to Second Party fifty per cent (50%) of the difference between $15,000.00 and the proceeds of said sale. In the event of a sale of said interest and equity, fifty per cent (50%) of the net excess over $15,000.-00, after payment of any capital gain tax thereon, shall be paid by First Party to Second Party in equal monthly instalments without interest payable on the 1st day of each month, commencing on the first day of the month following said sale and ending September 1, 1964."

Appellant contends that the trial court erred in entering its order and judgment requiring appellee to pay to appellant the sum of $4,943.45, and in failing to require appellee to pay appellant the sum of $24,370.

The court will first consider the agreement.

On January 17, 1955, the appellee with others, reduced to writing prior oral negotiations whereby he agreed to exchange his interest in equity of corporations mentioned in the Property Settlement Agreement (hereinafter referred to as "A" to "J" corporations) for shares of the common capital stock of Magma Copper Company. The performance of the *agreement* with Magma (hereinafter called Magma agreement) *was subject to numerous conditions,* including: authorization by the New York

Stock Exchange for the listing of 23,375 shares of Magma stock; order of the Securities and Exchange Commission declaring effective the registration of said 23,375 shares of Magma stock; approval of the agreement by Reconstruction Finance Corporation or the Secretary of the Treasury; obtaining of opinion from Magma's counsel with respect to title and obtaining of opinion from Magma's counsel with respect to the authority of the parties to be bound by the provisions of the agreement. All of said conditions were to be met on or before March 28, 1955.

Under the terms of the Magma agreement the closing of the transaction was to take place on or before March 31, 1955. The conditions were met, and the transaction was completed on or about April 11, 1955. Appellee received 760 shares of the common capital stock of Magma Copper Company in exchange for all of his right, title and interest in and to the capital stock of the "A" to "J" corporations. On the last mentioned date stock of Magma was sold on the New York Stock Exchange at prices ranging from 86¾ to 87. Under the circumstances at that date, April 11, 1955, the 760 shares of Magma stock received by appellee were worth not less than $65,740.

October 25, 1955, appellee's attorney sent a letter to appellant's attorney explaining the transfer. The letter read in part:

" 'On October 26, 1954, the day the agreement to sell was entered into, the value of the Magma Copper stock ranged from a low of $45.75 to a high of $46.00 per share. Mr. Ashton is willing to use the $46.00 figure; accordingly the 760 shares at $46.00 per share had a value on October 26, 1954 of $34,960.00.

" 'Mr. Ashton's cost basis for the 'A' to 'J' stock was $3.51 per share, or a total of $2,667.60 for the 760 shares involved. Deducting this amount from the value of the stock on October 26, 1954 leaves a net amount of $32,292.40 to be taxed as a capital gain at 25%, which amounts to $8,073.10. When the amount of the tax is deducted from the $34,960.00 value above-mentioned there remains a net of $26,886.90 which exceeds the $15,000.00 figure mentioned in paragraph III (1), supra, by $11,886.90.

" 'Under the terms of the Property Settlement Agreement Mrs. Miller is entitled to receive one-half of the $11,886.90 which amounts to $5,943.45; under the terms of said Agreement that amount is payable in equal monthly installments commencing on November 1, 1954 and ending on September 1, 1964, a period of 119 months; accordingly the amount payable per month is just under $50.00. At Mrs. Miller's request Mr. Ashton some time ago paid her

$500.00 to apply on the amount due her in connection with this transaction, and at her request we are sending her a copy of this letter together with Mr. Ashton's check for $500.00 representing an additional payment on said obligation. Mrs. Miller had indicated a desire that she be paid an additional $1500.00 to apply on the obligation which Mr. Ashton is willing to advance to her as soon as the necessary documents can be prepared and signed. * * *' "

Appellant's counsel replied stating that the proposal therein was not acceptable. Appellant's counsel on January 3, 1957, directed letters to appellee and Mr. Robert A. Becker requesting that Becker make a determination of the value of the 760 shares of Magma stock held by appellee as of January 1, 1957. Becker made no such determination. Appellee did not request him to do so. January 2, 1957, Magma stock sold on the New York Stock Exchange for prices ranging from 86½ to 89. Thus, the 760 shares of Magma stock held by appellee on January 1, 1957 were worth not less than $65,740.

It is, of course, a fundamental rule of construction that in construing an agreement the court must strive to ascertain and give effect to the intention of the parties as of the time the agreement was made. Employer's Liability Assurance Corporation v. Heaton Lunt & Co., 82 Ariz. 320, 331 P.2d 393; Henderson v. Jacobs, 73 Ariz. 195, 239 P.2d 1082. Also the Court endeavors to place itself in the position of the contracting parties and endeavors to read the instrument in the light of circumstances surrounding them at the time it was made, and will consider the subjects which they then evidently had in view so that the court may understand the language used in the sense intended by the parties using it. Branker v. Bowman, 62 Ariz. 214, 156 P.2d 898.

In this light the Court will briefly consider the circumstances of the parties. In accordance with the desires of the parties and the terms of the property settlement agreement the property was appraised and divided. The "A" to "J" stock, however, was not immediately subject to evaluation. Therefore the aforementioned property settlement agreement provided for its valuation and division. When a commodity as flexible in value as stock on the open market is the consideration for a sale or exchange, the valuation of the stock must be determined as of a day certain or the subsequent increase or decrease in the value of the stock would materially affect the transaction. Appellee's contention that appellant's equity in the Magma stock amounted to $46 per share (the market value of the stock as at October 26, 1954) was based on the theory that the agreement to transfer "A" to "J" stock for Magma stock constituted a sale.

In support of his contention appellee referred to the chapter relating to "Sales of Securities" A.R.S. § 44–1801, subd. 9, where a sale is defined in the following language:

"'Sale' or 'sell' means a sale or other disposition of a security or interest in a security for value, and includes a contract to make such sale or disposition. * * *"

■ It should be noted, however, that "sale" in the above-mentioned statute was defined for the purpose of identifying transactions brought within the purview of the blue-sky law. Obviously, it was not intended that such definition have any impact upon the rights of buyers and sellers as between themselves. Such a construction of the act might defeat its own purposes by interfering with legitimate transactions. While the statute, must be construed to effect the purpose of the legislature, it should not be extended beyond its original purport. We must necessarily conclude that the exchange of stock in question does not bring the transaction within the purview of the blue-sky laws and hence the sale definition contained in that statute does not apply.

■ The general rule is found in 33 C.J.S. Exchange of Property § 1, p. 4:

"* * * As a general but not absolute rule, where the consideration for a transfer of property is expressed or · valued in money terms and treated as a specified amount of money the transaction is a sale, but where the consideration is other property not measured in money terms the transaction is an exchange."

Also in Capps et ux. v. Mines Service, Inc., 175 Or. 248, 152 P.2d 414, 416:

"' "Sale" is a word of precise legal import, both at law and in equity. It means, at all times, a contract between parties to give and pass rights of property, for money, which the buyer pays or promises to pay to the seller for the thing bought and sold.' Williamson v. Berry, 8 How. 495, 544, 12 L.Ed. 1170, quoted with approval in Coulter v. Portland Trust Co., 20 Or. 469, 481, 26 P. 565, 568, 27 P. 266."

With the general rule as a test, the exchange of stock described in the Magma agreement was not a sale. Notwithstanding, we are agreed that the final outcome of the issue before this Court does not hinge on this conclusion. If the transaction were a contract to sell, the stock still could not be valued as of the date of the original oral understanding October 26, 1954. Why is this true? Because the parties could not have intended that they would be bound by an intricate and voluminous agreement until the same had been reduced to writing and signed by the parties. As between those parties the contract would have been unenforceable by reason of the Statute of Frauds. Furthermore, when the contract

was finally signed on January 17, 1955, it was a wholly executory contract and did not then constitute a sale. It was an escrow agreement with numerous conditions precedent which had to be met. The difference between a sale and a contract to sell is made clear by the provisions of A.R.S. § 44–201, and the prior declaration of this Court in Peters v. Macchiaroli, 74 Ariz. 62, 65, 243 P.2d 777.

■ In the latter' case we quoted from the Uniform Sales Act as stated in 46 Am. Jur., Sales, Sec. 420:

"A contract of sale is said to be executory when there remains something to be done the performance of which is a condition precedent to the transfer of the property. Accordingly, the principle often stated that if anything remains to be done by either party to the transaction before delivery—as, for example, something remaining to be done to determine the price, quantity, quality, or identity of the thing sold, or *something remaining to be done to make it deliverable*—the contract is merely executory, and title does not vest in the buyer until such acts have been performed." (Emphasis original.)

The transaction in this case was not supposed to be closed until March 31, 1955. It was actually complete on April 11, 1955, after compliance with the numerous conditions precedent therein. Therefore, any value of the stock prior to that time had no tangible significance. The intent to deliver and the delivery occurred only when the conditions precedent were satisfied.

Due to the peculiar circumstances of the stock market the value of the 760 Magma shares was *identical* on January 1, 1957 (the date the appraisal should have been made) and on April 11, 1955 (the date when the conditions precedent to transfer and exchange were fulfilled). Therefore, under this particular set of circumstances it mattered not whether the transaction was or was not a sale.

■ Appellee's claim that he is entitled to deduct capital gain tax before computing the amount due appellant is without foundation. The transaction resulted in a tax free exchange. The parties did not consider in writing the possibility of appellee making a tax free exchange. It was the clear intent of the parties however that appellant would share equally with appellee in the "A" to "J" stock. The Property Settlement Agreement stated that the appellee could sell " * * * in any manner and at such prices as he deemed reasonable * * *."

His method of disposing resulted not in a sale but in a tax free exchange. This was the appellee's choice. He had the control. The appellant had no control. Since the transaction resulted in a tax free exchange and for reasons aforementioned there was

no sale, there was obviously no capital gain; and since there was no capital gain, the capital gain clause became ineffective. That the stock would at some future time possibly be subject to tax after the appellant's interest in same had been satisfied and that the appellant should be liable for it was clearly not within the intention of the parties.

The express intent of the Property Settlement Agreement signifies that January 1, 1957 should be the date for affixing value to the stock. On that date the value was found to be not less than $65,740. The Property Settlement Agreement also states that the appellee shall pay the appellant 50% of the difference between $15,000 and that amount. Of this amount $1,000 has already been paid.

For the foregoing reasons the order and judgment of the trial court is reversed and remanded to the trial court with directions to render a judgment in favor of appellant in the amount of $24,370, to order that amount which is now in arrears under the agreement to be paid forthwith, and the balance to be paid in equal monthly installments commencing March 1, 1961, and ending September 1, 1964.

Appellee contends on cross appeal that the trial court erred in entering its order and judgment directing appellee to pay $750 to appellant as and for attorney's fees. We cannot find that the Court abused its discretion therein, and the judgment pertaining to attorney's fees is affirmed.

STRUCKMEYER, C. J., UDALL and LOCKWOOD, JJ., and ROSS F. JONES, Superior Court Judge, concur.

NOTE: Vice Chief Justice CHARLES C. BERNSTEIN being disqualified the Honorable ROSS F. JONES, Judge of Superior Court of Maricopa County, was called to sit in his stead and participate in the determination of this appeal.