401 P.2d 157

**GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, Ltd., Appellant,**

v.

**TRADERS FURNITURE CO., an Arizona Corporation, Daniel Grant and Jane Doe Grant, his wife, and David Bonzo and Jane Doe Bonzo, his wife, Appellees.***

**No. I CA–CIV 19.**

Court of Appeals of Arizona.

April 19, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7508. The matter was referred to this Court pursuant to Section 12–120.23, A.R.S.

**204**

Lutich, Hall, D'Angelo & Wilson, by Peter T. D'Angelo, Phoenix, for appellant.

Cavanagh, O'Connor & Anderson, by John P. Otto, Phoenix, for appellees.

DONOFRIO, Judge.

The appellant, General Accident Fire & Life Assurance Corporation, Ltd., a Pennsylvania corporation, hereinafter referred to as plaintiff, filed an action to recover damages caused to a building owned by Fred R. Horsley and Mary W. Horsley and leased to Traders Furniture Co., an Arizona corporation, hereinafter referred to as defendant. The defendant made a motion to dismiss supported by an affidavit and a copy of the lease covering the premises. The Court treated the motion as a motion for summary judgment and granted same. A judgment in favor of defendant was entered thereon and this appeal followed.

The plaintiff was obligated to pay the sum of $6,831.72 for the repair of fire damage to the leased premises because of a policy of insurance issued to the owner and lessor of the building. Plaintiff sued the defendant (Lessee) for this sum alleging that the damage was caused by negligence of defendant in installing certain floor tile in the building. For the purpose of this appeal simple negligence on the part of defendants is conceded and the plaintiff stands in the shoes of the owner of the property (Lessors) in respect to the claim against defendants.

The sole question before this court is whether as a matter of law under the facts shown by the affidavit and the terms of the lease, the defendants have been released from any obligation to reimburse the lessors for loss by fire caused by simple or ordinary negligence of the defendant.

This appeal presents a question of law that appears to be one of first impression in this State. We have carefully reviewed the authorities and have selected the course which we believe to incorporate the sounder reasoning and be most in harmony with modern principles. .

At common law the obligation of a landlord to repair or rebuild demised premises rested solely on an express covenant or understanding. Without such, he was not bound to repair or to pay for repairs made by the tenant. Witty v. Matthews, 52 N.Y. 512–514; Friedman v. LeNoir, 73 Ariz. 333, 241 P.2d 779 (1952); Grizzle v. Runbeck, 74 Ariz. 92, 244 P.2d 1160 (1952). Similarly, the lessee was held by the obligation of his express covenant to pay rent, although the premises had been actually destroyed. Vann v. Rouse, 94 N.Y. 401, 405.

To ameliorate the harsh effect of this rule, we have enacted as many states have done, the Statute A.R.S. 33–343 which has been carried over since the 1913 code as follows:

"The lessee of a building which, without fault or neglect on the part of the lessee, is destroyed or so injured by the elements or any other cause as to be untenantable or unfit for occupancy, is not liable thereafter to pay rent to the lessor or owner unless expressly provided by written agreement, and the lessee may thereupon quit and surrender possession of the premises."

It is to be noted that the statutory relief only extends to destruction or damage which occurs "without fault or negligence" on the part of the tenant, but the parties are, nevertheless, permitted to expressly provide otherwise by written agreement.

We must analyze the instant case in the light of these principles and determine what was the agreement of the parties (Lessors and Lessee).

An examination of the lease discloses that the premises are leased to the defendant, Traders Furniture Company, for a period of fifteen years and that said defendant lessee is to pay as rent for the same 4% of the total net sales of the company each month with a provision providing for a minimum rental of $1000.00 and a maximum rental of $2400.00 for any month regardless of the said total net sales.

Although the entire lease must be considered as a whole we deem it only necessary to set out verbatim the following pertinent provisions:

"* * * 1. Lessors shall pay all taxes and special assessments levied upon said leased premises, and any insurance against destruction of said leased premises by fire or casualty shall be at the expense of Lessors and in such amounts as Lessors may desire. * * *

"2(b) In the event that during the term of this lease the buildings, or any of them, on the demised premises, shall be destroyed by fire or other casualty, or be so damaged or injured by fire or other casualty as to become untenantable and unsuitable for the carrying on of Lessee's business therein, Lessors shall, within a reasonable time, restore the same to the condition they were in immediately prior to the happening of such casualty, but the rent shall not abate during the period from the date of the casualty to the date upon which the restoration of the premises is completed and the Lessee is restored to possession. In case the buildings or any of them, upon the demised premises shall be damaged by fire or other casualty during the term hereof, such damage not being sufficient to render said premises untenantable, the Lessors will immediately proceed to restore the premises to as good condition as they were in prior to such damage, but the rent shall not abate during the time such repairs are being made.

"3. Lessee shall make, at Lessee's sole expense and cost, all needful repairs, improvements, replacements and additions to the leased premises, which when made, shall belong to and become the property of Lessors. The Lessee shall make all repairs, alterations or changes, of every kind and nature that may be required, to the leased premises, regardless of the extent thereof, and whether the same be structural, ordinary, extraordinary, or of any other nature, and regardless of how the same may be necessitated, and, upon the termination of this lease, will return the same to the Lessors in good condition and repair, loss by fire and ordinary wear and tear excepted. * * *

"6. The Lessee agrees to provide, pay for and maintain any and every kind of insurance that may, at any time during the term of this lease, be required by any law, ordinance or governmental regulation to be carried or maintained by the owners of all or any part of the leased premises or of any building that may be erected thereon, or by the owner or holder of this lease or of the leasehold estate created hereby. The Lessee shall require every subtenant of said leased premises, or of any part thereof, and every contractor or agent acting thereon for, or by agreement with, or permission of, the Lessee, to provide, carry and maintain all such insurance as may at any time be required of them by any law, ordinance or governmental regulation pertaining thereto; and the Lessee agrees to hold and save the Lessors free and harmless from all liability, loss, damage or expense which may accrue by reason of a failure of the Lessee, or any person or persons above designated, to provide, carry or maintain all or any part of such insurance.

"The Lessee agrees to provide, pay for and maintain such amount of acci-

dent, casualty and employer's and other liability insurance as in its judgment will reasonably and continuously protect and save the Lessors and the Lessee, and any of them, and the leased premises and the buildings and improvements that may be located thereon, free and harmless from all liability that may or might arise from any accident, or any injury or damage to any person or property in or about said leased premises, and from any injury or damage to persons or property occurring on account of the construction of any building or by reason of the condition thereof, or of any part of said leased premises. * * * "

Upon examination of these provisions we find that the lessors were obligated to assume the cost of the fire insurance on the building. Although it was not required that they take out insurance they, nevertheless, were required to restore and make the premises tenantable in the event of fire. The terms are explicit that lessors are to restore or rebuild and the lessee is to continue paying rent during the time of restoration or rebuilding in the event of fire. Upon the termination of the leasehold the lessee is to return the premises to lessors in good condition and repair, "loss by fire and ordinary wear and tear excepted".

It is well to note that item 6 of the lease clearly shows a division of responsibility as to the purchase of certain insurance protection and contains in the provision for liability insurance that the purchased insurance was to protect both lessors and the lessee.

A search into earlier cases reveals the general rule construing covenants by a tenant to surrender the premises at the termination of a lease in a certain condition, loss by fire excepted, to be that the tenant is exempted from damages which was the result of accident but not that which was the result of the negligence of the tenant. 36 Corpus Juris, Landlord and Tenant, § 867, p. 201, 51 C.J.S. Landlord and Tenant § 414, p. 1162; Brophy v. Fairmont Cream-

ery Co., 98 Neb. 307, 152 N.W. 557, L.R.A. 1918A, 367 (1915); Carstens v. Western Pipe & Steel Co. of California, 142 Wash. 259, 252 P. 939.

In dealing with this question the courts indulge in considerable reasoning to determine what the parties had in mind when they made the provision excepting loss by fire. In the Carstens case (supra), which is in keeping with the foregoing rule, the court said:

"The thing for us to do is to determine what the parties to the lease had in mind when they provided that the leased property was to be surrendered in good condition, damage by fire excepted. Did that clause mean that the lessee was to be relieved from fires which were the result of its own negligence? We ought not to come to that conclusion, unless the lease definitely and certainly so expresses itself. It would be natural and customary for the lessee to want to escape liability for purely accidental fires and for the lessors to be willing to grant that relief, but it would not be natural that the lessors would be willing to release the lessee from damages caused by its own active negligence. Such a concession would hardly be looked for in a contract between business men. If the parties intended such a contract we would expect them to so state in clear terms." Carstens case (supra) 142 Wash. 259, 265, 252 P. 939, 941.

A leading case making an altogether different approach to this question is General Mills, Inc. v. Goldman, 8 Cir., 184 F.2d 359 (1950). This case is more in keeping with the modern trend, and takes a more realistic view of the present day business world and the part fire insurance plays in the transaction of ordinary business affairs. The case stresses that insurance premiums are an important factor to be considered by the parties in determining rental payments.

The case involved similar provisions, namely, that the lessee was to return the premises to lessors in as good a condition,

loss by fire excepted, and that lessors were to assume the cost of obtaining fire insurance. The holding was that lessee was not liable for loss suffered due to fire even if occasioned by his own negligence. The court therein said:

"The premiums of fire insurance companies are based on actuarial computations of fire losses so occurring. The policies are standardized and we are informed of no other kind of fire insurance in use in this country." General Mills (supra) 184 F.2d 359, 365.

The court further stated:

"[3] It is very clear in the light of all the provisions of the lease, the circumstances of its execution and the understanding about fire insurance coverage to which the lease was related that by the provision that on termination of the lease the tenant should return the property in good condition 'loss by fire * * * excepted' the parties meant a loss by fire such as is always meant when men are talking about or figuring on the risk of it in business dealings— i.e., the 'loss by fire' which always is insured against in ordinary course and against which the landlords here intended to and did take out insurance in an amount greater than the owners' investment.

"When the lease here is so read and understood the agreement of the lease is simple, normal and reasonable and such as intelligent men would be expected to agree upon. The fire which occurred and the consequent loss were within the contemplation of the parties and was covered as they meant that it should be by the fire insurance." General Mills (supra) 184 F.2d 359, 366.

Another case following this reasoning is United States Fire Insurance Co. et al. v. Phil-Mar Corporation, 166 Ohio St. 85, 139 N.E.2d 330 (1956). The primary question raised in that case was whether a provision in the surrender clause of the lease, excepting therefrom "loss by fire and ordi-

nary wear and decay only excepted" relieved the lessee of his common law liability to the lessor for damages resulting from fire caused by the lessee's own negligence. At page 87 of the Ohio State Reports, at page 332 of 139 N.E.2d, the Court said:

"We are thus directly confronted with the question as to what the parties intended by the phrase, 'loss by fire * * * excepted.'

"It is a fundamental principle of law that a court in construing a written instrument must give words their common, ordinary and usual meaning, unless required to do otherwise by the instrument itself.

. "The term, 'loss by fire,' has, when considered in relation to policies of fire insurance, a definite meaning. As it is used in such policies the usual and ordinary meaning of such term is damage resulting from fire caused by act of God, accident or negligence.

"Clearly, to the ordinary man, the phrase, 'loss by fire,' means just that— loss by fire caused in any manner other than by his own arson."

The court on page 88, 139 N.E.2d page 332, went on to say:

"Considering first the surrender clause in which such phrase is incorporated, we find that the complete phrase is 'loss by fire and ordinary wear and decay only excepted.' Thus it is apparent upon the face of the lease that, although the parties qualified the exception as to wear and decay to mean *ordinary* wear and decay, they made no such qualification as to loss by fire. The lease does not say loss by ordinary fire or non-negligent fire, but merely loss by fire, with no qualification or limitation. The parties, had they so desired, could easily have qualified such provision as they did with 'wear and decay.' The parties having directly qualified a part of the exception, their failure to do so with the remainder indicates that their apparent intent was to put no qualification or limitation on

fire losses. In other words, they apparently intended to relieve the lessee from liability for any fire loss."

After analyzing other provisions of the lease the Court concluded:

"Thus, considering the lease as a whole and in particular those provisions relating to destruction and insurance and the fact that the phrase 'loss by fire,' is unqualified and unlimited, it is apparent that under the circumstances of this case the parties intended to relieve the lessee from its common-law liability to the lessor for loss by fire.

"The rights of the appellant insurance companies being those of subrogees and rising no higher than those of the lessor, the lessor having released the lessee from liability, it follows that the judgment of the Court of Appeals is correct, and it is affirmed."

We are governed by the same general law announced in these cases. In construing agreements the primary duty of the court is to determine and give effect to the intention of the parties. The court endeavors to place itself in the position of contracting parties and to read the instrument in light of circumstances surrounding them at time it was made, and will consider subjects which they then evidently had in mind. Fagerberg v. Phoenix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022 (1937); Henderson v. Jacobs, 73 Ariz. 195, 239 P. 2d 1082 (1952); Ashton v. Ashton, 89 Ariz. 148, 359 P.2d 400 (1961); Rental Development Corp. of America v. Rubenstein Construction Co., 96 Ariz. 133, 393 P.2d 144 (1964).

By making the same analysis of the instant case we would come to the same conclusions reached in those cases following the reasoning of the General Mills case. Except for some of the wording, many of the pertinent provisions of the instant lease are found in the leases of the other cases.

The same reasoning would apply as stated in one of the cases, to wit:

"Under the construction contended for by the lessor it would be necessary for both parties to the lease to carry fire insurance if they are to be protected. The lessee would have to insure against fire due to his negligence, and the lessor against fire due to other causes. * * * The parties contemplated that the risk of loss by fire should be insured against and we see no reason to suppose that they did not contemplate the customary insurance policy which covers both accidental and negligent fires. * * * From the lease as a whole we conclude that the lessee was not to be liable for loss by fire regardless of the cause of the fire, and that the parties intended that the lessor should look solely to the insurance as compensation for the damage caused by any kind of fire." Cerny-Pickas & Company v. C. R. Jahn Company, 7 Ill.2d 393, 131 N.E.2d 100, 103 (1955).

We believe the better reasoned authority is on the side of the modern trend as announced in the leading case of General Mills, Inc. v. Goldman (Supra).

Giving the ordinary meaning to the term "loss by fire" as used in relation to fire insurance policies such term includes damage resulting from fire caused by acts of God, accidents or negligence. To the ordinary man, the phrase "loss by fire" means just that—loss by fire caused in any manner other than by his own arson.

The action of the trial court dismissing the complaint as to the defendant was proper.

Judgment affirmed.

CAMERON, V. C. J., and MELVYN T. SHELLEY, Superior Court Judge, concurring.

NOTE: Chief Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge MELVYN T. SHELLEY was called to sit in his stead and participate in the determination of this decision.