# Melanie A. Simpson v. State Mutual Life Assurance Company of America

[382 A.2d 198]

No. 145-77

Present: Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.

Opinion Filed December 6, 1977

*Blum Associates, Inc.*, Burlington, for Plaintiff.

*Richard H. Gregory* of *Dinse, Allen & Erdmann*, Burlington, for Defendant.

Hill, J. The plaintiff was insured under an employee group medical care policy issued by the defendant. The policy contained the following provisions:

Medical Care Benefits—Exclusions and Limitations
1. The policy does not cover and covered medical expenses shall not include charges incurred ...

(h) for dental care or treatment, unless the dental care or treatment is for the purpose of repairing damage to natural teeth caused by accidental bodily injury sustained while insured and is rendered (i) within three months of the accident, or (ii) during a period of total disability which commenced on the date of the accident; (This exclusion shall not apply to covered hospital expenses incurred for dental care or treatment.)

The plaintiff experienced loss of hearing, earaches, and cracking and popping of her jaw joint. She consulted Dr. John Heisse, an ear, nose and throat specialist. He diagnosed her condition as temporomandibular joint syndrome, a condition caused by uneven tension in the jaw muscles. Dr. Heisse concluded that the tension was caused by psychological stress. This complaint may be treated by psychotherapy, chemotherapy, physiotherapy or by the use of an oral prothesis. Dr. Heisse referred plaintiff to a dentist, Dr. Ralph Titus. Dr. Titus agreed with Dr. Heisse's diagnosis. He proceeded to reposition plaintiff's jaw by means of medication and the installation of oral prosthetic devices. Dr. Heisse charged $29.95 for his services. Dr. Titus submitted a bill for $3,150.00 for his services.

Plaintiff filed a claim with defendant for reimbursement for the cost of the services of Dr. Heisse and Dr. Titus. The defendant refused plaintiff's claim and plaintiff sued. An agreed statement of facts was submitted by the parties. The lower court concluded that the work of both doctors was merely the culmination of treatment of a problem that was medical in nature and therefore not within the policy exclusion. Defendant appeals this ruling. We affirm.

The two questions raised by this appeal are simply posed: (1) Did the work performed by Dr. Heisse fall within the dental care exclusion of the policy? (2) Did the work performed by Dr. Titus fall within the dental care exclusion of the policy? The parties have agreed that the work was not "for the purpose of repairing damages to natural teeth caused by accidental bodily injury."

The rules for construction of insurance contracts are well-settled. Insurance contracts are "to be construed according to

[their] terms and the evident intent of the parties as gathered from the language used." *Utica Mutual Insurance Co.* v. *Central Vermont Railway, Inc.*, 133 Vt. 292, 295, 336 A.2d 200, 203 (1975). The contract is to be strictly construed against the insurer, but not so as to deprive the insurer of the benefit of an unambiguous provision placed therein for its benefit. *Noyes* v. *Commercial Travelers*, 125 Vt. 336, 338, 215 A.2d 495, 497 (1965). "If clear and unambiguous, the provisions of the contract must be given force and effect and be taken in their plain, ordinary and popular sense." *Id.* at 339, 215 A.2d at 497.

Our task, then, is to determine whether the language of the exclusionary clause, "dental care and treatment," is "clear and unambiguous." Jurisdictions and authorities differ over whether a court may refer to extrinsic sources to aid its determination of this question. As Chief Justice Traynor said in *Pacific Gas & Electric Co.* v. *G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 36-37, 442 P.2d 641, 643-44, 69 Cal. Rptr. 561, 563-64 (1968):

> When a court interprets a contract on this basis [refusing to consider extrinsic evidence because it finds the meaning of certain language to be plain], it determines the meaning of the instrument in accordance with the "... extrinsic evidence of the judge's own linguistic education and experience." (3 Corbin on Contracts (1960 ed.) [1964 Supp. § 579, p. 225, fn. 56].) The exclusion of testimony that might contradict the linguistic background of the judge reflects a judicial belief in the possibility of perfect verbal expression (9 Wigmore on Evidence (3d ed. 1940) § 2461, p. 187.) This belief is a remnant of a primitive faith in the inherent potency and inherent meaning of words.

(Footnotes omitted.)

 It is settled law that in the interpretation of insurance contracts, "[w]hen a pivotal word is not defined either in the policy or the application it is permissible for the court to take judicial notice of its meaning as given in standard works, such as dictionaries." *Abraham* v. *Insurance Co.*, 117 Vt. 75, 80, 84 A.2d 670, 673 (1951). Therefore, in referring to the extrinsic sources discussed below to determine the meaning of the language at issue in this case, we adhere to prior Vermont law

as well as to the counsel of *Pacific Gas & Electric Co.* v. *G.W. Thomas Drayage & Rigging Co., supra,* 69 Cal. 2d at 36-37, 442 P.2d at 643-44, 69 Cal. Rptr. at 563-64.

Webster's New Twentieth Century Dictionary (2d ed. 1975) at 486 defines "dental" as "pertaining to the teeth" or "relating to dentistry." "Dentistry" is defined as the "profession of the dentist; the branch of medical science that deals with the teeth and their care" *Id.* "Dentist" is defined as "a person whose profession is the care of the teeth." *Id.* Black's Law Dictionary (4th ed. 1968) at 523 defines "dentist" as "[o]ne whose business it is to diagnose and treat imperfections or diseases of human teeth," and "dentistry" as a "special department of medical science, dealing with the treatment of the diseases, etc., of human teeth." These definitions support the argument that "dental care" does not include treatment of a malpositioned jaw.

The defendant argues that regardless of these definitions we should be guided by the definitions provided in the Vermont statutes regulating dentistry. 26 V.S.A. § 721 et seq. 26 V.S.A. § 721 reads in pertinent part:

(a) A person shall be regarded as practicing dentistry ...

....

(4) Who undertakes ... to diagnose or profess to diagnose, or to treat or profess to treat or to prescribe for or profess to prescribe for any lesions, diseases, disorders, for deficiencies of the human oral cavity, teeth, gums, maxilla, or mandible or adjacent associated structures; or

(5) Who extracts human teeth, corrects malpositions thereof or of the jaws.

We think that 26 V.S.A. § 721 can serve merely as another extrinsic source to be taken into account along with the dictionaries cited above. We are here interpreting a contract between private parties and, absent evidence of an intention by those parties to incorporate the statutory definition into their agreement, we are not bound by that definition.

There are, to be sure, cases in which the statutory or other legally settled meaning of a term controls the definition of that term when it is used by private parties in their contract; for example, where the term at issue describes a specific legal

procedure, see *Dolman* v. *United States Trust Co. of New York*, 2 N.Y.2d 110, 138 N.E.2d 784, 157 N.Y.S.2d 537 (1956) ("condemnation"); or where the term *as used by the parties* has developed a fixed meaning through a history of judicial or statutory interpretation, see *Hunter Bros. Milling Co.* v. *Kramer Bros.*, 71 Kan. 468, 80 P. 963 (1905) ("f.o.b."); or where the terms are deemed to incorporate statutory requirements governing the subject matter of the contract, see *Gutowski* v. *Crystal Homes, Inc.*, 26 Ill. App. 2d 269, 167 N.E.2d 422 (1960) (village ordinance minimum side yard requirements incorporated in construction contract).

■ The case at bar differs from the cases cited above and others like them in that the statute which is offered as controlling here was clearly not intended to define terms in the contractual context in which we are asked to interpret them. In 26 V.S.A. § 721 the Legislature was describing a field of activity for which a particular license was required. We note that such a definition would presumably be very broad, in order to reach all borderline cases and thereby fully effectuate the legislative purpose of "protecting the citizens of the state from untrained, unqualified and unauthorized practitioners." See *Markus & Nocka* v. *Julian Goodrich Architects, Inc.*, 127 Vt. 404, 407, 250 A.2d 739, 741 (1969). We are faced here with an argument very similar to that faced by the Arizona Supreme Court in *Ashton* v. *Ashton*, 89 Ariz. 148, 359 P.2d 400 (1961). In that case a property settlement between divorced spouses provided for certain consequences if stock awarded to one spouse was "sold." Appellee argued that the meaning of the term "sold" was controlled by the definition of the Arizona statutes governing "Sales of Securities." The Court said: " 'sale' in the above-mentioned statute was defined for the purpose of identifying transactions brought within the purview of the blue-sky law. Obviously, it was not intended that such definition have any impact upon the rights of buyers and sellers as between themselves." *Id.* at 153, 359 P.2d at 403. See also *Deerhurst Estates* v. *Meadow Homes, Inc.*, 64 N.J. Super. 134, 165 A.2d 543 (1960) (cited with approval in 4 Williston on Contracts § 615, at 627 (3d ed. 1961)). 26 V.S.A. § 721 defines "dentistry" for the purpose of identifying activity brought within the purview of the licensing statute. To blindly apply this definition to the

language at issue here would constitute a breach of our duty to interpret the contract according to the evident intent of the parties. *Utica Mutual Insurance Co.* v. *Central Vermont Railway, Inc., supra,* 133 Vt. at 295, 336 A.2d at 203.

Nor are we persuaded by the bare statement that the statutory definition controls because "the parties are presumed to know the law." Parties are only required to know the law governing their actions, here the contracting to pay for and supply insurance coverage. It would be absurd to require contracting parties to be aware of every example of usage in the Vermont Statutes Annotated, whether or not related to the subject matter of the contract, in order to be sure their agreement said what they intended.

We conclude that the statutory definition can do no more than render the meaning of "dental care and treatment" ambiguous. The phrase is susceptible of a number of constructions, ranging from a restrictive definition such as care of teeth only, to a broad definition including care of the teeth, oral cavity or associated structures. Under the restrictive definition, the work performed on plaintiff's jaw joint would not be excluded from insurance coverage; under the broadest definition, the same work would be excluded. As this Court said in *Utica Mutual Insurance Co.* v. *Central Vermont Railway, Inc., supra,* 133 Vt. at 295, 336 A.2d at 202: "[I]f the Court [reads] the exclusionary language as susceptible of two different meanings, the Court is bound to adopt the construction most favorable to the insured." Therefore, we must hold that the diagnosis and repositioning of the jaw undergone by plaintiff do not fall within the exclusion for "dental care and treatment."

*Affirmed.*

**Larrow, J.** (dissenting). I have no quarrel with the general rules for construction of insurance contracts recited and given lip service in the majority opinion. But I do not think that the phrase "dental care or treatment" became unclear or ambiguous until the opinion was written. I would give the phrase its "plain, ordinary and popular sense." *Noyes* v. *Commercial Travelers,*

125 Vt. 336, 338, 215 A.2d 495 (1965). Without the understandable promptings of sympathy, the bill in question here falls clearly within the quoted exclusion. The services in question were rendered by a dentist, within the carefully spelled out field of his statutory license. They were rendered after the patient was referred to him, for that purpose, by a doctor of medicine. The treatment was selected in preference to three other options clearly within the medical field. The plaintiff's present arguments that the policy was ambiguous seem to me completely untenable, particularly where it does not appear that she sought any clarification prior to incurring the expense.

I cannot escape the conclusion that the average person, referred by her doctor to her dentist, must have known that the purpose of referral was for "dental care or treatment." I find no ambiguity or lack of clarity in the policy exclusion, and would limit recovery to the bill rendered by Dr. Heisse. The majority opinion interprets the policy to "unjustifiably outrun the risk intended to be insured against." *State* v. *Glens Falls Insurance Co.*, 132 Vt. 97, 101, 315 A.2d 257 (1974).

*Chief Justice Barney joins in the foregoing dissent.*