OPINION
CONTRERAS, Judge.
Cross-claimant the Estes Company appeals from the judgment denying its cross-claim for indemnity and the denial of its motion for a new trial on the cross-claim. We reverse and remand with directions to enter judgment for Estes on its cross-claim.
NATURE OF CASE
The parties to this appeal were defendants in a wrongful death action. Based upon an indemnity agreement The Estes Company, the general contractor, filed a cross-claim seeking indemnity from Aztec Construction Company, a subcontractor.
Before the trial on the principal claim, the defendants agreed that the trial judge could, without jury and based upon the evidence presented, decide the cross-claim following a jury verdict. The trial resulted in a verdict in favor of the plaintiffs and a judgment that both defendants were negligent. Following the trial, the trial judge, in denying the claim for indemnification, stated in a minute entry:
[t]he Court does not believe that the contract itself sufficiently demonstrates that the parties intended that Estes would be indemnified for its own negligent actions which may have related to the trenching operation.
The Court, in addition, does not believe that ... a common law right to indemnification [exists]. Estes knew of the open trench, it knew of the hazards of trenching (as evidenced by signs erected at other points on the project), and it knew or should have known that no warnings or special precautions were being taken with regard to the trench. It also knew children played in the area. Its acquiescence in the continuation of the condition constitutes active negligence.
The judgment on the verdict in favor of the plaintiffs has been compromised and paid, with each of the parties to this appeal paying one-half of the agreed amount, and reserving their rights as to indemnity. This appeal is from the portion of the judgment entered on October 21, 1980, which found in favor of Aztec on the cross-claim for indemnification and from the order of January 12, 1981, which denied the motion for a new trial on the cross-claim.
FACTUAL BACKGROUND
On Sunday, December 10, 1978, at a subdivision construction site in northwest Phoenix, two boys died as a result of the collapse of a sewer trench in which they were playing. The trench was being dug by Aztec Construction Company pursuant to its subcontract with Estes Company. Aztec followed a process of digging the trench, laying pipe and filling the trench. The subcontract provides, in pertinent part, that “[subcontractor shall protect and indemnify [contractor from any claims, liability, or losses suffered by anyone wholly *168 or partially through the negligence of [subcontractor or any of its agents or employees.”
The principal activity of the general contractor was to coordinate the work of its subcontractors. Estes’ construction superintendent, Robert Stewart, visited the site daily to check on the progress of the project including the excavation and to see if there were any problems. He testified at trial that Estes recognized a general duty of safety over the total site and had posted signs at the north end of the construction area where model homes were located and in the area where the streets came to an end.
City of Phoenix inspectors regularly inspected the project to ensure compliance with the approved plans and specifications and the Maricopa Association of Governments (“MAG”) specifications. The City of Phoenix has authority to correct conditions that are unsafe. There is no evidence that the project was cited for any code violations or that the excavation was not in accordance with industry-wide procedures. The evidence shows that the trench was being dug with a trenching machine, but that shoring was to be used in the trench when pipe was being laid. In addition, even though the open trench was not fenced, barricaded, or marked by warning signs, there is no evidence that this was in violation of applicable codes or general construction practice. Aztec, as a subcontractor determined the type of equipment to be used and the manner in which the excavation was to be performed.
INDEMNITY PROVISION IN THE CONTRACT
A. The Effect of the Indemnity Provision
The trial court, in denying Estes’ cross-claim, reasoned that the contract between Estes as general contractor and Aztec as a subcontractor did not sufficiently demonstrate that the parties intended that Estes would be indemnified for its own negligent actions which may have related to the trenching operation. We disagree.
The parties expressly contracted with respect to the duty to indemnify and the extent of that duty must be determined from the contract. Rossmoor Sanitation, Inc. v. Pylon, Inc., 13 Cal.3d 622, 119 Cal. Rptr. 449, 532 P.2d 97 (1975). The test in construing indemnity contracts is:
[Wjhether or not, considering all of the relational circumstances, the indemnitee reasonably expected as part of his "bargain with the indemnitor that the duty he failed to perform and on which his liability to plaintiff is predicated would be performed by the indemnitor. Then, of course, as between themselves, the indemnitee should be relieved of responsibility for his breach of duty vis-a-vis plaintiff since the indemnitor’s obligation to indemnify in that situation would clearly have been within the parties’ contemplated bargain.
Doloughty v. Blanchard Constr. Co., 139 N.J.Super. 110, 352 A.2d 613, 620 (1976). See also General Accident Fire & Life Assurance Cory. v. Traders Furniture Co., 1 Ariz.App. 203, 401 P.2d 157 (1965). Furthermore, a general principle of contract law is that where parties bind themselves by a lawful contract and the terms of the contract are clear and unambiguous, a court must give effect to the contract as written. Isaak v. Massachusetts Indemn. Life Ins. Co., 127 Ariz. 581, 623 P.2d 11 (1981); Dutch Inns of America, Inc. v. Horizon Corp., 18 Ariz.App. 116, 500 P.2d 901 (1972). Where a subcontractor expressly agrees to indemnify the general contractor, he will be bound by the clear terms of his undertaking. See Annot. 143 A.L.R. 312 (1943).
The indemnity provision in this construction contract states that Aztec will indemnify Estes “from any claims, liability or losses suffered by anyone wholly or partially through the negligence of [subcontractor.” The clause does not specifically address what effect the indemnitee’s negligence will have on the indemnitor’s obligation to indemnify and, therefore is regarded as a “general” indemnity agree *169 ment. Rossmoor, Gonzales v. R.J. Novick Constr. Co., Inc., 20 Cal.3d 798, 144 Cal. Rptr. 408, 575 P.2d 1190 (1978). It is well established in Arizona that under a general indemnity agreement an indemnitee is entitled to indemnification for a loss resulting in part from an indemnitee’s passive negligence, but not active negligence. Busy Bee Buffet v. Ferrell, 82 Ariz. 192, 310 P.2d 817 (1957); Transcon Lines v. Barnes, 17 Ariz.App. 428, 498 P.2d 502 (1972). See also Annot. 27 A.L.R.3d 663 (1969); Booth-Kelly Lumber Co. v. Southern Pacific Co., 183 F.2d 902 (9th Cir. 1950); Morgan v. Stubblefield, 6 Cal.3d 606, 100 Cal.Rptr. 1, 493 P.2d 465 (1972).
Therefore, and in conformance with established law, we find that the terms of the indemnity provision are clear and unequivocal and sufficiently demonstrate that the parties intended that Estes would be indemnified notwithstanding its own passive negligence. We next consider the question of whether Estes’ negligence was active or passive.
B. Estes’ Negligence Was Not Active
The trial court concluded that Estes was actively negligent because it acquiesced in a condition which was a hazard. We disagree with this conclusion.
Generally, active negligence is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform. On the other hand, passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition, perform a duty imposed by law, or take adequate precautions against certain hazards inherent in employment. Busy Bee Buffet; Transcon Lines v. Barnes; Rossmoor; Gonzales. See also 41 Am. Jur.2d Indemnity § 17 (1968); Restatement of Restitution § 95 (1937); Garbincius v. Boston Edison Co., 621 F.2d 1171 (1st Cir. 1980).
Whether conduct constitutes active or passive negligence depends upon the circumstances of a given case. Gonzales. As stated in Busy Bee Buffet, in order to find active negligence there must be some active participation in the wrong which was the immediate cause of the injury. Here, the immediate cause of the deaths of the two children was the collapse of the trench while they were in it. The only evidence presented which would sustain a finding that the excavation presented a peculiar risk of such harm was that Aztec used equipment or techniques which were improper for the type of soil in which the excavation was being performed. In this regard, plaintiffs presented evidence that Aztec was negligent in using a trenching machine rather than a backhoe. Plaintiffs’ expert testified that a backhoe slopes the walls of the trench to minimize the chance of cave-ins. There was additional testimony that the soil in this area was not appropriate for trenching machines and that a backhoe should have been used. But Estes did not actively participate in the trenching operation. Furthermore, there is no evidence that Estes knew or should have known of any danger created by Aztec’s use of a trenching machine rather than a backhoe.
Estes, as general contractor, was responsible only for the general supervision and coordination of the construction of the residential project. Aztec, as a subcontractor, determined the type of excavation equipment to be used and the manner in which the excavation was performed. It is true that Estes, in recognizing a duty to the public to warn that construction was underway, posted signs to that effect. However, it is our opinion that Estes’ responsibility to supervise the construction of the residential development and the posting of notice signs is not, without more, the type of affirmative act which connotes active, as opposed to passive, negligence.
Significantly, the trial court did not find that the actions or conduct of Estes were affirmative acts of negligence. Rather, the trial court concluded that Estes was *170 actively negligent because it acquiesced in the continuation of a hazardous condition. We disagree with this conclusion of the trial court. The act of trench digging, unlike blasting operations, cannot be regarded as a hazardous condition or as an inherently dangerous activity. Significantly, there was no evidence that the City of Phoenix had cited Aztec for any code violations in its excavation operations. And more significantly, there was no evidence that Aztec was conducting the trenching operation in violation of any governmental rules or regulations or contrary to industry-accepted practices. It is merely speculative that a hazardous condition existed and, therefore, there is no reasonable basis for the court’s conclusion that Estes was actively negligent because it acquiesced in the continuation of a hazardous condition. Rather, and again we reiterate, the cause of the children’s deaths was the collapse of the trench which the jury, based upon the evidence presented, could conclude was due to Aztec’s selected technique of excavation. If a potentially dangerous condition was created, it was the activity of Aztec and not Estes which caused this condition to exist. Mere nonfeasance on the part of Estes in failing to discover a dangerous or a potentially dangerous condition arising from the manner in which the work was being performed by Aztec the subcontractor is passive negligence, and will not preclude indemnity under a general indemnity provision. Busy Bee Buffet; Thornton; Rossmoor; Gonzales; Garbincius.
CONCLUSION
Because the contract contains a general indemnification provision and the mere nonfeasance of Estes constitutes passive negligence, we conclude that the trial court erred in denying Estes’ cross-claim for indemnification. Accordingly, we reverse and remand with directions to enter judgment for Estes on its cross-claim.
CORCORAN and KLEINSCHMIDT, JJ., concur.