## C. D. EMMERSON V. THE STATE.

*No. 332. Decided February 10.*

1. **Theft of a Horse—Continuance.**—On a prosecution for theft of a horse, an application for continuance which alleges that the absent witness would testify that "he saw defendant purchase the alleged stolen horse for a valuable consideration, in Fort Worth," is too indefinite to be considered.

2. **Same—Evidence Sufficient.**—See opinion for facts stated which are held sufficient to sustain a conviction for horse theft.

3. **Same—Possession—Temporary Custodian.**—When one having the actual control, care, or management of a horse, loans it temporarily to another to ride to church, and it is there stolen, *Held,* that the indictment properly alleged the "possession" in the former, and it was neither necessary to allege or prove the want of consent of the temporary custodian who had ridden it to church.

APPEAL from the District Court of Denton. Tried below before Hon. D. E. BARRETT.

The indictment, which was for horse theft, contained three counts. 1. That the horse was the property of, and stolen from the possession of D. C. Lay. 2. That the horse was the property of C. C. Fowler, and stolen from the possession of D. C. Lay. 3. That the horse was the property of C. C. Fowler, and stolen from the possession of one B. B. Mathis. The third count was quashed on motion of defendant. At the trial defendant was convicted, his punishment being assessed at five years' imprisonment in the penitentiary.

The following statement is taken from the brief of appellant's counsel:

About the 2nd or 3rd day of August, 1893, one D. C. Lay, who lived about two miles north of Joshua, in Johnson County, Texas, and two miles from Julip school house, had in his possession a certain reel-footed sorrel pony horse, with a Spanish brand on it. The pony belonged to C. C. Fowler, who had been a laborer for Lay, but had gone off, leaving the pony in Lay's custody and control. One B. B. Mathis, who was renting land from Lay, on said evening or night borrowed the pony to ride to Julip school house to a meeting, and when meeting was over he found the pony gone from where he had hitched it, and Mathis returned to Lay's about 11 o'clock that night without the pony. About four or five days after this Mr. Barnhill, a deputy sheriff of Denton County, brought the pony back, the defendant having been arrested in the city of Denton with the pony in his possession. The school house where the horse was lost is about twenty miles south of Fort Worth. Denton is about thirty-five miles north of Fort Worth. Joshua is a station on the railroad between Cleburne and Fort Worth. The prosecution proved by B. B. Mathis the above facts as to the loss of the horse. The want of consent of D. C. Lay to the taking, as well as the want of consent of C. C. Fowler, was fully proven, but Mathis was not

asked in regard to his consent to the taking.   A witness (Williams) saw the defendant in Joshua about 12 or 1 o'clock on the day preceding the night when the horse was taken.   Defendant had lived in that community and has a brother living about seven miles west from Joshua.   The defendant was first seen in possession of the horse on the morning of Saturday, August 5th, in Denton, which is about thirty-five miles northeast of Fort Worth.   He was offering the horse for sale at $30.   Some of the witnesses who were officers, but not known to defendant, asked him where he got the horse, and he said at Denison. When arrested and notified that these parties suspected him of stealing the horse, he told them that he had bought the horse at Fort Worth. Defendant in his testimony for himself admits that he was at Joshua, as testified to by one of the State's witnesses, but explains what he was doing there.   He also explains how he came by the horse, and makes the same statement that he had made to the officers when arrested. Defendant's statement is, that he bought the horse in Fort Worth on Thursday from a man who called himself Flynn, in the presence of T. Z. Davis, an acquaintance, who was then in Fort Worth.

The witness T. Z. Davis, who defendant claims was present when the horse was bought, is the witness for whose testimony defendant sought a continuance.   Defendant had used ample diligence to secure the attendance of the witness at the trial.

*F. E. Piner*, *P. Mounts*, and *H. E. Lobdell*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—Appellant was convicted of horse theft and his punishment assessed at five years.   There are but three questions that need be considered:

1.  Did the court err in overruling the application for continuance? The absent witness, T. Z. Davis, would testify "he saw defendant purchase the alleged stolen horse, for a valuable consideration, in Fort Worth."   This application is too indefinite to be considered.   The facts, not mere conclusions, should be set forth.   Rollins' case, 32 Texas Crim. Rep., 566.

2.  The evidence is clearly sufficient to warrant the conviction.   Appellant was seen at a railway station in Johnson County, two miles from where the horse was stolen, that night.   He had no business of any kind there.   On the morning of the third day he was trying to sell the horse in Denton—where he stated to one that he had purchased the horse in the Indian Territory; to another, that he bought him in Denison from Davis or Evans.   Again he stated he had bought it in Fort Worth from Flynn, and Davis was present.   On the trial he took the stand and stated that as soon as he bought the horse he started for the

Indian Territory, but had been riding around hunting for work. He admitted he had slept out in the woods, but claimed to have lost his money accidentally. The court did not err in overruling the motion for a new trial. -

3. Appellant claims that the court erred in refusing his special instruction to the effect that if D. C. Lay had the actual care, control, or management of the horse, and loaned the same to B. B. Mathis to use in the discharge of his business, and it was then stolen, the State must show the want of consent of Mathis to the taking. The facts show that the stolen horse belonged to one Fowler, who left the neighborhood, leaving his horse in charge of D. C. Lay; that on Wednesday night, August 2, 1893, Mathis borrowed the horse to ride to church, two miles distant, and return, and the horse was stolen while at the church. The court charged that under such a state of facts the horse would be deemed to be in the possession of D. C. Lay at the time it was stolen. The Code declares that "the possession of the person unlawfully deprived of property is constituted by the exercise of the actual control, care, or management of the property, whether the same be lawful or unlawful." Penal Code, art. 729. To constitute possession, mere temporary custody is not sufficient; there must be combined with it the control, care, and management of the property. Willson's Crim. Stats., sec. 1273. As said in Bailey's case, 18 Texas Crim. App., 427: " 'Possession' and 'custody' are not convertible terms, under the Code; and if property, at the time it is taken, be in the mere temporary custody of a ward, servant, or other person, the *indictment* need not allege the possession to be in such temporary custodian." It therefore follows that the want of consent of such custodian need not be proven. We find no error in the charge given, or in refusing the special charge.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, Judge, absent.