Canadian Radium and Uranium Corporation, Appellant, v. Indemnity Insurance Company of North America, Appellee.

Gen. No. 45,124.

Opinion filed October 29, 1952. Rehearing denied November 14, 1952. Released for publication November 17, 1952.

HINSHAW & CULBERTSON, of Chicago, for appellant; OSWELL G. TREADWAY, of Chicago, of counsel.

VOGEL & BUNGE, of Chicago, for appellees; L. H. VOGEL, GEORGE C. BUNGE, and RALPH MILLER, all of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff appeals from an order dismissing its complaint and entering judgment for the defendant upon the pleadings. No evidence was heard. The sufficiency of the complaint is the only question before us.

Plaintiff's action is based upon a comprehensive general liability insurance policy issued by the defendant company to the plaintiff, a copy of which policy was attached to the complaint. By the terms of the policy defendant agreed to pay on behalf of plaintiff all sums which the latter should become obligated to pay by reason of the liability imposed upon it by law for damages ''because of bodily injury, sickness or

172

disease, * * * sustained by any person or persons and caused by accident," and to defend in plaintiff's name and behalf any suit against it alleging such injury, sickness or disease, and seeking damages on account thereof "even if such suit is groundless, false or fraudulent." The policy provided that "Upon the occurrence of an accident written notice shall be given * * * to the *company* as soon as practicable," the notice to contain "reasonably obtainable information respecting the time, place and circumstances of the accident, the name and addresses of the injured and of available witnesses."

The policy had a "Products Exclusion Endorsement," which reads as follows:

"It is hereby understood and agreed that the policy to which this endorsement is attached does not cover claims for damages on account of bodily injuries or death resulting therefrom, arising out of the handling or use of or the existence of any condition in goods or products sold or handled by the *insured,* after the *insured* has relinquished possession thereof to others, anything contained in the printed conditions of this policy to the contrary notwithstanding."

The complaint alleges that plaintiff entered into a contract with Radium Industries, Inc., a copy of which contract is attached to the complaint; that by the terms of the agreement plaintiff granted to Radium Industries a license to produce and distribute radon ointment in accordance with plaintiff's specifications; that it was to deliver to Radium Industries, as needed, a sufficient amount of radium in solution for the production of said ointment, together with a satisfactory emanator and other necessary equipment and supplies, including boxes, tubes, containers, stationery and miscellaneous items; that "title to all radium, equipment and unused supplies used in the production and distribution of

said Ointment shall remain in first party and shall be returned to said first party by said second party upon the termination of this contract as hereinafter provided.''

Paragraphs 3, 4 and 5 of the agreement, having an important bearing upon the exclusion endorsement attached to the policy of insurance, read as follows:

''3. First party [plaintiff] agrees at its own expense to perform all necessary and advisable research work in connection with the production and improvement of said Ointment, and to initiate and supervise all sales promotion, contacts and suitable advertising at such times and places and in such manner as it, in its sole discretion, may deem advisable.

''4. Second party shall at its own expense furnish and maintain suitable space, heat, light and telephone in the City of Chicago, and shall furnish at its own expense all necessary labor to produce and distribute said Ointment. All delivery costs shall be the expense of second party.

''5. Second party shall invoice the purchasers of said Ointment in the name of first party for the Ointment produced and distributed by said second party, at prices and upon terms to be determined from time to time by first party, and all funds received by second party in payment of said invoices shall be deposited by second party in the Chicago account of the first party. Second party shall be responsible for collection of said invoices.''

Paragraph 6 relates to the compensation to be paid to Radium Industries for its services in the production and distribution of said ointment.

The complaint alleged that on June 20, 1945, Radium Industries, Inc., employed as a laboratory technician, Mary Moore, whose duties required her to operate the

emanators and other equipment and devices used in producing radon ointment; that she claimed to have sustained bodily injuries as the result of the radioactivity of the radium, its compounds and decay products, and the manner in which she was required to handle them in the production of the ointment; that on November 8, 1945, Mary Moore filed a complaint in a United States District Court against the present plaintiff, Canadian Radium & Uranium Corporation, alleging that under its contract with Radium Industries, Inc., the present plaintiff furnished the equipment and materials for the manufacture by the former company of radon ointment; that during a period of approximately seven months, ending on or about June 20, 1945, she was employed by Radium Industries, working in and about the manufacture of the ointment; that in performing her duties she came in close proximity to radium and radioactive substances, thereby being exposed to the hazard of having her tissues deleteriously affected by the radioactive emanations from these materials; that in consequence of continued exposure, her hands and other parts of her body were affected by the radioactive emanations and became diseased and afflicted with radium poisoning; that Mary Moore alleged that the present plaintiff, the owner of the radium, had, by its negligent and wrongful conduct, caused her to sustain damages and bodily harm in negligently and carelessly failing to warn her of the dangerous character of the radium, negligently and carelessly providing plans and methods of doing the work which involved her undue exposure to the radioactive emanations, and negligently furnishing defective emanators and other equipment which resulted in her exposure to a dangerously excessive amount of radioactive emanations. She also alleged due care on her part, and a lack of

knowledge of the risk incident, to the handling of radium and radioactive substances. Damages in the amount of $200,000 were asked.

The complaint further alleges that upon being advised of the claim of Mary Moore, plaintiff gave defendant insurance company immediate notice thereof, as required by the policy, forwarded to defendant the summons and complaint served upon it, and demanded that the insurer defend the action in the name and on behalf of the insured; that the insurance company refused to defend the action and denied liability, asserting that there was no coverage under the policy because the injury claimed by Mary Moore did not arise out of an accident; that the insured thereupon proceeded with its own defense, and shortly before the trial date succeeded in settling Mary Moore's claim for $2,500; that in the course of its defense it had been obliged to pay out other sums for attorneys' fees, investigations, depositions, physical examinations of Mary Moore, advice and services of scientists trained in handling radioactive substances, and arranging for witnesses to be present at the trial; and that the expenses, together with the sum paid in settling the suit, totaled $6,963.96.

Defendant's motion for judgment was made upon two grounds:

"(1) That the claim of Mary Moore involved an occupational disease and was not for bodily injury, sickness or disease caused by accident, within the contemplation of the insurance policy, and

"(2) That her alleged disability arose out of the handling and use of goods and products sold or handled by plaintiff after it had relinquished possession thereof to Radium Industries, Inc., and that liability on account of such a claim was excluded by a 'Prod-

176

ucts Exclusion Endorsement' attached to and forming a part of the policy.''

The Supreme Court in the instant case (411 Ill. 325) held that the injury complained of was caused by accident within the contemplation of the insurance policy.

There remains only to be considered defendant's contention that the exclusion provision of the policy bars recovery under the policy. The exclusion endorsement in question excludes injuries arising out of ''the handling or use of or the existence of any condition in goods or products sold or handled by the insured, *after the insured has relinquished possession thereof to others.''* (Italics ours.)

Under the terms of the contract between plaintiff and Radium Industries, the title to the radium solution and all equipment furnished by plaintiff in the production of the ointment in question remained in plaintiff, and certainly as to such, Radium Industries merely had the custody thereof, as distinguished from possession, and plaintiff cannot be deemed to have relinquished possession within the meaning of the exclusion provision.

The term ''possession,'' used in the policy, in our judgment means legal possession, unless the contrary appears from the language in the policy. It is a well recognized rule of construction that an insurance contract will be construed in favor of the insured. *Forest City Ins. Co. v. Hardesty,* 182 Ill. 39; *Peterson v. Manhattan Life Ins. Co.,* 244 Ill. 329; *Budelman v. American Ins. Co.,* 297 Ill. 222. In the *Budelman* case the action was upon a fire insurance policy, which excluded liability ''if any change other than by the death of an insured takes place in the * * * possession of the subject of insurance * * * by voluntary act of the insured or otherwise.'' Plaintiff in that action was the vendor in a contract of sale of the real estate,

177

which contained no provision with respect to possession thereof. The vendee under the contract of purchase took possession but was not to get title until the purchase price was paid. A fire occurred, destroying the property, during the possession by the vendee. The defendant contended that there was a change in possession within the meaning of the policy, which barred recovery. The court there said (p. 227):

"We consider a fair interpretation of this alienation clause to be that the term 'possession' is used in its limited legal sense. From that conclusion it follows that there was no change in possession, because legal possession follows the legal title. It is not necessary for the holder of the legal title to occupy his premises to be in legal possession of them. (*Walters v. People,* 21 Ill. 178; *Williams v. Forbes,* 47 id. 148; *Muller v. Balke,* 167 id. 150.)"

In *Gibson v. St. Paul Fire & Marine Ins. Co.,* 117 W. Va. 156, 184 S. E. 562, 563, it was said:

"The cases properly emphasize the thought that the temporary care of property does not rise to the dignity of 'possession' within the ordinarily accepted legal meaning of that term. Custody of things means to have them in charge—safekeeping. It implies temporary physical control merely, and does not connote domination, or supremacy of authority, as does possession in its full significance. Possession implies custody coupled with a right or interest of proprietorship. Possession is inclusive of custody, but custody is not tantamount to possession. Consult: 22 Ruling Case Law, p. 80; Security Ins. Co. v. Motor Co. (Tex. Civ. App.) 235 S. W. 617; Emmerson v. State, 33 Tex. Cr. R. 89, 25 S. W. 289; Shipp v. Patten, 123 Ky. 65, 93 S. W. 1033; Allen v. Ins. Co., supra; Tripp v. Ins. Co., supra."

We think the contract also bears all of the characteristics of an agency relationship between plaintiff and Radium Industries. Under the contract plaintiff agreed to perform all necessary and advisable research work in connection with the production and improvement of said ointment and to initiate and supervise all sales promotions. The contract not only reserved title in plaintiff, but all ointment sold was to be invoiced by Radium Industries in the name of plaintiff, the money collected was to be deposited in the account and name of plaintiff, and the price and terms of sale by Radium Industries were to be fixed and determined by plaintiff.

The agency relationship is further emphasized by the sixth paragraph of the contract, which provides for compensation to Radium Industries for its "services" rendered in the production and distribution of said ointment.

In *Andrews v. Votaw*, 240 Ill. App. 311, 320, the rule is stated:

"An agent is one who undertakes to manage some affairs to be transacted for another by his authority on account of the latter, who is called the principal, and to render an account. Bouvier Law Dictionary, vol. 1, p. 84; *Equity Produce & Stock Exchange v. Keyes*, 67 Ill. App. 460. And where one puts property in the hands of another to keep or manage, the relation is that of principal and agent. 2 Corpus Juris, sec. 11, p. 425; *Weer v. Gand*, 88 Ill. 490; *Mabley v. Irwin*, 16 Ill. App. 362; *Hartley v. Phillips*, 198 Pa. 9."

■ Therefore, Radium Industries' possession of the instrumentalities which caused the injuries in question, under such agency, must be deemed the possession of plaintiff and could not, under such circumstances, be considered a relinquishment of possession

by the insured within the meaning of the exclusion provision.

The complaint states a good cause of action. The judgment is reversed and the cause remanded with directions to enter an order requiring an answer to the complaint.

*Reversed and remanded with directions.*

LEWE, P. J. and KILEY, J., concur.