## State of Vermont v. Glens Falls Insurance Company, Inc.

[315 A.2d 257]

No. 136-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 5, 1974

*Kimberly B. Cheney,* Attorney General and *Raymond L. Betts,* Assistant Attorney General, for Plaintiff.

*Joseph H. Badgewick, Esq.,* of *Ryan, Smith & Carbine,* Rutland, for Defendant.

**Barney, J.** This is a declaratory judgment action brought by the State of Vermont to determine whether or not the defendant, as insurer, has an obligation to defend the state in a certain lawsuit. The lower court issued an order requiring the defendant company to enter its appearance and defend. This order was appealed.

The factual situation is quite straight-forward and undisputed. An executive of the editorial staff of *Vermont Life,* a state employee, solicited from a certain Eric M. Sanford some colored slides or transparencies for possible use in the magazine. Such slides were duly submitted. The last known whereabouts of these slides was testified to by the *Vermont Life* employee who requested them. He wrapped them for mailing and placed them in the out-going mail basket in the offices of *Vermont Life,* together with instructions that they be sent by certified mail. There is no evidence as to what happened to them after that. They have never turned up anywhere, and there is no record of their ever being certified. Customarily, such mail is picked up by an employee of the state and taken to the postal system for the state offices, where it is consolidated and then taken to the United States Post Office. A search of both post office operations has turned up no trace of the transparencies. Mr. Sanford has brought suit against the state for the negligent "loss or destruction of the aforesaid transparencies." The lower court found that, "The transparencies have mysteriously disappeared." The state employee responsible for the custody of the transparencies, and who placed them in the mail basket, acknowledged that he assumed he was responsible for their safekeeping on behalf of Mr. Sanford.

■ The duty of an insurer to enter and defend a case on behalf of its insured is broader than its obligation to respond in damages. The policy itself frames it this way:

II. Defense, Settlement, Supplementary Payments:
> With respect to such insurance as is afforded by this policy, the company shall:
> (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent;

Even with the burden so broadly put, however, the company cannot properly be required to enter and defend litigation unrelated to risks it has not insured against. The question in this case is precisely that; What risk did the defendant policy include?

■ The premiums paid to insurance companies are computed on the basis of the probabilities of occurrences coming to pass that are within the insurance coverage. Since the contracts are the drafting product of the companies, their provisions are, quite rightly, construed most strongly against the company in questionable cases. *American Fidelity* v. *Elkins*, 125 Vt. 313, 315, 215 A.2d 516 (1965). This principle cannot be carried to the point of extending the coverage to make the policy something different than contemplated, however. *Noyes* v. *Commercial Travelers of America*, 125 Vt. 336, 339, 215 A.2d 495 (1965). Where the interpretation urged is not only strained, but would encompass a risk not contemplated by the kind of policy issued nor intended to be undertaken by the company, the insurer is entitled to that fair construction which reflects the understanding of the parties. *Dunsmore* v. *Co-op Fire Ins. Assn.*, 131 Vt. 14, 18, 298 A.2d 853 (1972). For example, the cases reveal that it is common for insurance carriers to offer burglary insurance, limited to loss resulting from illegitimate forcible entry, at a lower premium than a more comprehensive policy that would protect against frauds, or employee pilferage. To minimize the distinction between such risks would pervert the intention of the parties and compromise the bargain as entered into by the insurer. See

*Weldcraft Equipment Co.* v. *Crum & Foster Ins. Cos.*, 225 Pa. Super. 420, 312 A.2d 68 (1973).

The policy with which we are concerned is a comprehensive general liability policy. It has two aspects:

Coverage A—Bodily Injury Liability:

To pay on behalf of the insured sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death time resulting therefrom, sustained by any person and caused by accident.

Coverage B—Property Damage Liability:

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

By endorsement, the term "accident" was deleted in favor of the word "occurrence", defined as follows:

(c) "occurrence" means an accident or exposure to conditions which results in *bodily injury* or *property damage* during the policy period, provided the *bodily injury* or *property damage* is neither expected nor intended from the standpoint of the insured; and

(d) "property damage" means physical injury to or destruction of tangible property.

■ The finding of the lower court, which is unchallenged, is that the transparencies "mysteriously disappeared." From this the state argues that they have, in effect, been destroyed, insofar as Mr. Sanford is concerned, and therefore the defendant company should undertake the defense in the litigation. But there is no evidence of actual destruction, merely evidence that they cannot be found. The destruction is conjectural. As was pointed out in a case similar in its facts, simple disappearance is no proof of destruction. *Meyer* v. *United States Fidelity and Guaranty Co.*, 4 Ill.App.2d 399, 124 N.E.2d 675, 677 (1954).

■ An examination of 10G. Couch, Insurance §§ 42.73–75 and 42:108 (2d ed. R. Anderson 1962), points up the fact that insurance coverage for disappearance of property is generally

regarded as related to policies pertaining to loss by theft or burglary. Sometimes the policy is framed so that disappearance raises a presumption of theft, or it may be written as an indemnity policy covering lost or mislaid property. Compare *Austin* v. *American Casualty Co.*, 193 A.2d 741 (D.C.Ct.App. 1963), with *Aetna Insurance Co.* v. *Zoblotsky*, 481 P.2d 761 (Okl. 1971).

It is clear that an interpretation of the language of the liability policy issued by the defendant would unjustifiably outrun the risk intended to be insured against. *Abraham* v. *Insurance Co.*, 117 Vt. 75, 79, 84 A.2d 670 (1951); see also *Enosburg Falls* v. *Hartford Ins. Co.*, 117 Vt. 114, 121–23, 85 A.2d 577 (1952). In such circumstances the insurance company has no obligation to defend. *Wendell* v. *Union Mutual Fire Ins. Co.*, 123 Vt. 294, 297, 187 A.2d 331 (1963).

*Judgment reversed. Judgment that the defendant recover its costs.*