**TOWN OF SPRINGFIELD, VERMONT,**
Plaintiff-Appellee,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Defendant-Appellee,

and

**The Employers Mutual and Casualty Company, Defendant-Appellant.**

No. 1052, Docket 84–7976.

United States Court of Appeals, Second Circuit.

Argued April 2, 1986.

Decided June 27, 1986.

Allan R. Keyes, Rutland, Vt. (Ryan Smith & Carbine, Ltd., Rutland, Vt., on brief), for defendant-appellee U.S. Fidelity and Guar. Co.

David A. Barra, Burlington, Vt. (Anthony B. Lamb, Paul, Frank & Collins, Inc., Burlington, Vt., on brief), for defendant-appellant.

Before KEARSE, PRATT and ALTIMARI, Circuit Judges.

KEARSE, Circuit Judge:

Defendant The Employers Mutual and Casualty Company ("EMC") appeals from so much of a judgment of the United States District Court for the District of Vermont, James S. Holden, Judge, entered in this diversity action, as declared EMC contractually obligated to defend plaintiff Town of Springfield, Vermont (the "Town"), and its officials, and to satisfy any judgment that might be rendered against the Town in connection with certain litigation brought pursuant to 42 U.S.C. § 1983 (1982), involving an alleged unconstitutional taking of property. On appeal, EMC contends principally that the court did not properly give effect to a provision in its insurance policy that excluded from coverage claims of property destruction resulting from certain acts of the Town or its officials. EMC's appeal is opposed by defendant United States Fidelity and Guaranty Company ("USF & G"), which the judgment also declared obligated to defend and indemnify the Town. We conclude that the district court erred in its construction of the insurance contract between EMC and the Town, and we therefore reverse the judgment of the district court and direct that judgment be entered in favor of EMC.

## I. BACKGROUND

The material facts are not in dispute. On October 12, 1982, a fire occurred in Springfield on premises owned by Factory Falls Associates and occupied by Factory Falls Associates, Vermont Fibers, Inc., and

Vermont Pellets, Inc. (collectively the "owners" or "property owners"). On the following day, demolition of the top story of the premises was commenced by order of the Town's fire chief. As a result, the property owners sued the Town and its officials for damages pursuant to 42 U.S.C. § 1983 ("§ 1983 action"), alleging that the demolition of the premises constituted a taking of their property without due process of law and without just compensation, in violation of their rights under the Fifth and Fourteenth Amendments to the Constitution.

At the time of the fire and the demolition, the Town was insured under various policies issued by defendants. It had two policies issued by USF & G, one for general liability and another for excess indemnity; and it had a so-called "linebacker policy" issued by EMC, obligating EMC to defend and indemnify it for losses, in excess of a deductible amount, reflecting amounts that the Town became legally obligated to pay because of certain "Wrongful Act[s]" as that term was defined in the policy. The Town notified EMC and USF & G of the property owners' claims and requested that the insurance companies defend the § 1983 action. Both insurers refused, denying coverage for the acts at issue.

The Town commenced the present action against EMC and USF & G, seeking a declaration that the two insurers were obligated to defend the § 1983 action and to satisfy any judgment in favor of the owners. All parties moved for summary judgment. EMC's motion was based principally on an exclusion from coverage ("Exclusion (f)"), which its policy described as follows:

### EXCLUSIONS

This insurance does not apply to and [EMC] shall not be liable to make any payment in connection with any claim made or suit brought against the Insured:

. . . .

(f) for any damages, direct or consequential,

1. arising from a Wrongful Act resulting in, or

2. arising from a Wrongful Act from which no damages would have resulted except for the occurrence of

bodily injury, sickness, disease or death, or from damage to any tangible property including loss of use thereof; however, this exclusion does not apply to any damages, direct or consequential, arising from assault and battery against a person while the Insured or anyone acting on the Insured's behalf is making or attempting to make an arrest of such person or while such person is under arrest;

. . . .

"Wrongful Act" was defined in ¶ IV.D. of the EMC Policy as:

any and all of the following: actual or alleged errors, mis-statement or misleading statement, act or omission or neglect or breach of duty by the Insured, individually or collectively, in the discharge of Municipal duties, or any matter claimed against him solely by reason of being or having been an Insured during the policy period; . . . .

The district court denied both insurers' motions for summary judgment and granted summary judgment in favor of the Town. In a Memorandum of Decision dated November 7, 1984 ("Decision"), the court ruled that Exclusion (f) of the EMC policy did not apply to the circumstances of the § 1983 action, stating that

the plaintiff contracted with defendant Employers Mutual for legal liability insurance coverage to protect itself in the event of lawsuits arising from the performance of municipal duties. Whether a particular lawsuit falls within the definition of a "Wrongful Act" should be resolved in the insured's favor. Moreover, the court declines to read the policy exclusions so broadly as to sweep away Civil Rights Act violations from policy coverage.

Decision at 6. The court noted that the acts of the Town's fire chief, alleged by the property owners to be wrongful, might not be found wrongful in light of the discretion

accorded by Vermont law to a fire chief to cause the demolition of buildings if he deems it necessary to prevent the spread of fire, or in light of a possible common-law defense of good faith. The court entered judgment in favor of the Town, declaring that EMC and USF & G were obligated to defend the Town and its officials and to satisfy any judgment that might be rendered against the Town "within the limits of the coverage provided by the insurance agreements written by [EMC and USF & G and] in force and effect on October 12, 1982."

Both EMC and USF & G timely appealed the declaratory judgment to this Court. Their appeals were withdrawn, however, without prejudice to reinstatement following resolution of the § 1983 action. In that litigation, EMC persisted in its refusal to defend the Town, and USF & G alone undertook the defense. A jury eventually awarded the owners a total of $253,000 "as compensatory damage [sic] for the taking" of their property. EMC then reinstated its appeal from the declaratory judgment. USF & G did not reinstate its appeal from that judgment and urges us to affirm it. The Town has not participated in this appeal.

## II. DISCUSSION

■ On this appeal, EMC principally renews its contention that, in light of Exclusion (f), it had no obligation to defend or indemnify the Town or Town officials in connection with the § 1983 action. We agree.

Vermont law, which the parties agree is controlling, provides that where the language of a contract is clear and unambiguous, it must be given a reasonable construction according to the plain and ordinary sense of the words used. *Kusserow v. Blue Cross-Blue Shield Plan*, 140 Vt. 328, 437 A.2d 1114, 1117 (1981). The language of an insurance contract should be construed strictly against the insurer, but an unambiguous provision placed in the policy for the protection of the insurer should not be so construed as to deprive

the insurer of that protection. *Noyes v. Order of United Commercial Travelers of America*, 125 Vt. 336, 215 A.2d 495, 497 (1965). Policies that specifically and unambiguously exclude certain types of claims from coverage are effective to preclude the insurer's liability with respect to those types of claims. *American Fidelity Co. v. Elkins*, 125 Vt. 313, 215 A.2d 516, 518 (1965). Looking to these principles, we conclude that the district court should have found that Exclusion (f) precluded any liability on the part of EMC with respect to the § 1983 action.

Insofar as it is pertinent to the present action, Exclusion (f) of the EMC policy provides that "[t]his insurance does not apply to ... any claim made or suit brought ... for any damages ... 1. arising from a Wrongful Act resulting in, or 2. arising from a Wrongful Act from which no damages would have resulted except for the occurrence of ... damage to any tangible property including the loss of use thereof...." As defined in the policy, a "Wrongful Act" includes "any ... act ... in the discharge of Municipal duties." The language of Exclusion (f) (which is quoted in full in Part I above) is hardly concise, since (as is so often the case in insurance policies) an effort is made to cover a variety of circumstances in a single meandering sentence; nonetheless there appears to be no reasonable reading of this exclusion that does not plainly exclude from coverage the property owners' claims in the § 1983 action. The owners sued for money damages for the damage to or loss of the use of their property resulting from the Town fire chief's order for the partial demolition of the premises. Thus, the owners' claims plainly appear to be within both parts of Exclusion (f), since their claim for damages arises solely from the fire chief's order of demolition, an act in the discharge of his municipal duties, which (1) "result[ed] in" damage to or the loss of use of their property, and which (2) "would have resulted" in "no damages" "except for the occurrence of" the damage to and loss of use of their property.

We have considered all of USF & G's arguments on this appeal in opposition to EMC's invocation of Exclusion (f) and find them to be without merit. USF & G's principal contention is that that exclusion does not apply because the jury in the § 1983 action may have awarded the property owners some damages for the violation of their constitutional rights rather than for the loss of their property rights. Whatever the jury may have had in mind, it is nonetheless clear that without the property loss, there could have been no claim of an unconstitutional taking. Thus, the owners' suit was precisely within Exclusion (f).

The district court's bases for concluding that Exclusion (f) did not apply were also untenable. The possibility that the demolition might not be found "wrongful" because of Vermont statutory law or because of the good-faith defense to a claimed violation of constitutional rights had relevance only to whether or not the property owners might prevail in their § 1983 action. For purposes of determining the extent of insurance coverage, the EMC policy provided its own definition of "Wrongful Act"; that definition was neither coextensive with nor limited to notions of unconstitutionality or unlawfulness, and there was no warrant for the court's interpreting the definition in a way that did not reflect the normal meaning of the language agreed to by the parties.

Likewise, the court's general concern that insurance policy exclusions not be read "so broadly as to sweep away Civil Rights Act violations from policy coverage" should not have prevailed over the plain language of the policy. It appears that the parties bargained for coverage for certain claims of civil rights violations (Exclusion (f) by its terms does not exclude from coverage claims of, for example, assault against a person in the course of his arrest) and not for others. It is not within the province of the court to rewrite the coverage expressly agreed to by the parties.

 Finally, we conclude that the district court erred in declaring that EMC had an obligation to defend the § 1983 action.

Paragraph III of the policy provided that EMC had a duty to defend only with respect to claims covered by the policy. An insurer's duty to defend may be broader than its duty to indemnify, in the sense that defense may be required as to covered claims that are eventually ruled invalid and thus provide no occasion for indemnification; the duty to defend does not arise, however, absent a contractual provision to the contrary, with respect to claims that clearly are entirely outside the indemnification coverage provided by the policy. *E.g., State v. Glens Falls Insurance Co.,* 132 Vt. 97, 315 A.2d 257, 258 (1974). Since the claims of the property owners were plainly outside the coverage provided by the EMC policy, EMC had no duty to defend the § 1983 action.

### CONCLUSION

We reverse so much of the judgment of the district court as declared that EMC was obligated to defend and indemnify the Town and its officials in connection with the claims of the property owners in the § 1983 action. We remand for the entry of judgment dismissing the action as to EMC.