AVEMCO INSURANCE
COMPANY, Plaintiff,

v.

AEROTECH, LTD., Scott Faulkner,
a/k/a John Scott Faulkner, III, Grego-
ry Claude Lewis, Ray Hill, Mairead
Hill, and Illinois Union Insurance
Company, Defendants.

Ray HILL, Mairead Hill, and Scott
Faulkner a/k/a John Scott
Faulkner, III, Third–Party Plaintiffs,

v.

DANA INSURANCE AGENCY and R.J.
Saex Insurance Agency, Inc.,
Third–Party Defendants.

Civ. A. No. 85–3168–Y.

United States District Court,
D. Massachusetts.

Nov. 25, 1987.

Ralph T. Lepore, III, Warner & Stack-
pole, Boston, Mass., for plaintiff.

James N. Esdaile, Jr., Esdaile, Barrett &
Esdaile, Boston, Mass., for defendant Ray
& Mairead Hill for Illinois Union.

Michael Aylward, Morrison, Mahoney & Miller, Boston, Mass., for Illinois Union Ins.

Jeffrey Meller, Burlington, Vt., for Faulkner.

James Smeallie, Sherburne, Powers, Needham, Boston, Mass., fcr R.J. Saex.

Richard Quinby, Craig & Macauley, Boston, Mass., for Dana Ins.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This is a hard case. The result, while compelled by the plain meaning of the terms used in the two insurance contracts involved, may appear somewhat anomalous and unfair. Aerotech, Ltd. ("Aerotech"), a young Vermont corporation, appears to the Court to have proceeded prudently here, purchasing both an Owner's, Landlord's, and Tenant's liability insurance policy and products liability insurance. Now a tragic accident has occurred and the victims look to Aerotech for compensation. Aerotech looks to its insurers who *both* promptly disavow coverage—correctly, as it turns out. Now Aerotech, denuded of insurance coverage, must defend the suit alone. This may not be the best outcome for society in general since the accident victims, even if they prove liability, may never be adequately compensated and Aerotech may founder in bankruptcy with the attendant loss of job opportunities and the demise of a new corporation. Still, if written contracts are to continue to be construed as written, the result here flows inevitably from the language chosen. Sadly for Aerotech, it appears not to have considered its insurers as adversaries until much too late and seems not to have sought independent counsel to review its insurance situation until suit had been filed.

There are presently before the Court various motions for summary judgment all pertaining to the scope of insurance policy coverage. The insurance companies claim the injuries suffered are beyond the scope of their policies. The other parties, the alleged tortfeasors and victims, decry the attempts of the insurance companies to avoid coverage and move that this Court deny the companies' motions and enforce the companies' duties to defend and indemnify the claims in the underlying tort action. Some explication of the procedural posture of this case is warranted before the Court reaches the merits of this declaratory judgment action.

## I. BACKGROUND

### A. *Underlying "Accident Lawsuit"*

The following undisputed facts are gleaned from the pleadings and affidavits submitted. On September 16, 1983, Ray Hill ("Mr. Hill"), the outdoor editor for *Popular Mechanics Magazine*, was on assignment at Katama Airport in Edgartown, Massachusetts, researching an article on the sport of para-scending. As part of his story, Mr. Hill was instructed in the operation of parasails by Scott Faulkner a/k/a John Scott Faulkner III ("Faulkner") and Gregory Claude Lewis ("Lewis"), respectively the president and an officer of Aerotech. Aerotech is a Vermont corporation formed by Faulkner and Lewis for the purposes of manufacturing parascending chutes with related gear ("parasails") and for marketing the sport of parascending in the United States. Aerotech conducted parasail demonstrations at the Katama Airport and other New England locations in order to publicize its name and the sport. Although the Hills and Faulkner now dispute by way of argument whether Aerotech manufactured, distributed, or sold the parasail used by Mr. Hill at the time of this accident, Faulkner admitted that Aerotech owned the parasail in question in his answer. Answer of Faulkner, ¶¶ 13–14.[1]

On the date of the accident, Mr. Hill crashed into the ground while parascending and sustained serious injuries. On April 30, 1985, Mr. Hill and his wife, Mairead Hill ("Mrs. Hill"), filed suit against Aerotech, Faulkner, and Lewis in a case now docketed in this court as No. 85–1694–Y and referred to herein as the "accident law-

---

1. See *infra* p. 39.

suit." The suit alleges that Aerotech, Faulkner, and Lewis are liable for the Hills' damages under theories of negligence and breach of warranty.

At the time of the accident, there were in existence two liability insurance contracts issued to Aerotech. First, there was an "aviation products liability insurance policy" issued by Avemco Insurance Company ("Avemco") numbered 15–36–68–9 in effect from April 1, 1983 to April 1, 1984. Second, there was an "Owner's, Landlord's, and Tenant's insurance policy" issued by Illinois Union Insurance Company ("Illinois Union") numbered 1cpo61232 in effect from May 20, 1983 to May 20, 1984. Both Avemco and Illinois Union responded to Aerotech's tendering of the defense of the accident lawsuit to them by denying coverage but agreeing to defend until the coverage issues were resolved.

### B. *Declaratory Judgment Action*

On August 9, 1985, Avemco filed this declaratory judgment action which is the basis of the parties' opposing motions for summary judgment. Avemco seeks a declaration from this Court that it is not liable to indemnify or defend Aerotech, Faulkner, or Lewis in the accident lawsuit. Avemco named Aerotech, Faulkner, Lewis, Mr. and Mrs. Hill, and Illinois Union as parties. The Hills answered, asserting that coverage exists under both the Avemco and Illinois Union policies. Aerotech, Faulkner, and Lewis failed to answer and defaults were entered against them on October 22, 1985, October 7, 1985, and April 25, 1986, respectively. On October 30, 1985 Faulkner requested removal of the default which

was allowed without opposition.[2] Faulkner then filed an answer, a counterclaim against Avemco, and a cross-claim against Illinois Union alleging that the insurers had a duty to defend and that their refusal amounted to negligence and a breach of contract. Faulkner also claimed that the insurance companies were negligent in not providing Aerotech with appropriate coverage.

Illinois Union responded by filing a counterclaim for a declaration of its rights and obligations. On December 17, 1985, the Hills filed a third-party complaint against Dana Insurance Agency ("Dana") and R.J. Saex Insurance Agency, Inc. ("Saex") alleging that the agencies were negligent in obtaining appropriate insurance coverage for Aerotech. Faulkner filed a similar third-party action against Dana and Saex on March 21, 1986.[3]

Before the Court are Avemco's motion for summary judgment on its declaratory judgment claim and on the counterclaims filed by Faulkner and Illinois Union; Illinois Union's motion for summary judgment on its counterclaim for declaratory judgment; the Hills' motion for summary judgment on their cross-claim against Illinois Union;[4] and Faulkner's motion for summary judgment on his cross-claim against Illinois Union.

## II. DISCUSSION

### A. *Avemco Policy Coverage*

#### 1. Choice of Law

In this diversity action,[5] Massachusetts choice-of-law rules apply. *Klaxon Co. v.*

---

**2.** There remain outstanding defaults against Aerotech and Lewis. Motions for default judgment have been filed against both parties.

**3.** Third-party defendants Dana and Saex submitted a motion to dismiss the third-party claims that was allowed in part. See *Avemco Ins. Co. v. Aerotech, Ltd. et. al,* No. 85–3168 (D.Mass. April 18, 1986).

**4.** Federal Rule of Civil Procedure 13(g) permits cross-claims against a co-party where the claim arises out of the transaction or occurrence that is the subject matter of the original action. The Court interprets the Hills' prayer for relief as

properly asserting such a claim. *See Donovan v. Robbins,* 588 F.Supp. 1268, 1273 (N.D.Ill. 1984) (liberally treating motion as cross-claim in order to promote expeditious and economical adjudication of entire subject matter).

**5.** Avemco is an insurance corporation organized and with its principal place of business in Maryland. Aerotech is a Vermont corporation with places of business in Vermont and Massachusetts. Faulkner, president of Aerotech, resides in Florida. Lewis, an officer of Aerotech, resides in Washington, D.C. The Hills reside in New York. Illinois Union is an insurance cor-

*Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The Supreme Judicial Court, in *Bushkin Associates, Inc. v. Raytheon Co.,* 393 Mass. 622, 473 N.E.2d 662 (1985), rejected a choice-of-law test based upon where the contract was made, i.e., the so-called lex loci rule, and instead adopted a functional approach that responded to the interests of the parties, the states involved, and the interstate system as a whole. *Id.* at 630–31, 473 N.E.2d 662.

■ The parties entered into the agreement in Vermont. Aerotech, the insured seeking protection under the policy, is a Vermont corporation with its principal place of business in Vermont. The parties to this motion all agree that Vermont law should be applied. In this context, the parties' reasonable expectations as to the application of the law of the state of the insured most logically compels the conclusion that the law of Vermont be applied. Such a conclusion would produce the greatest fairness, predictability, and uniformity. To hold otherwise would require relitigation of the basic terms of the contract every time a claim arose with respect to the use of a parasail in a different state. "The interests of other states in which the parties do business in having disputes resolved promptly will be best served if the parties have a clear framework within which to resolve their disputes." *American Home Assurance Co. v. Libbey–Owens–Ford Co.,* 588 F.Supp. 764, 766 (D.Mass.1984).

Accordingly, this Court rules that a Massachusetts court would find that Vermont law governs this case and therefore this Court applies the principles of construction of the law of the State of Vermont.

2. Scope of the Coverage

The Avemco policy issued to Aerotech provides products liability coverage because of:

COVERAGE A—*Bodily injury* or

COVERAGE B—*property damage* caused by an *occurrence*, if the *bodily*

*injury* or *property damage* arises out of the *aircraft products hazard*, or

COVERAGE C—*grounding*, if the *aircraft loss of use* arose out of the *aircraft products hazard*.

Avemco Agreement, at 1 (emphasis in original).

Avemco contends that bodily injury is covered only if the bodily injury arises out of the "aircrafts products hazard," i.e., Avemco reads the language under the line beginning "COVERAGE B" as relating back to both Coverage B and Coverage A. Aircraft products hazard is defined in the definitional section of the policy to mean:

the handling or use of (other than by the *insured*) or existence of any condition in an *aircraft product* when such *aircraft product*

a. is not in the possession of or owned by the *insured* and

b. is away from the premises owned, rented or controlled by the *insured*.

Avemco Agreement, at 1 (emphasis in original).

Tracking the language of the Agreement, Avemco argues that the aircraft product, the parasail, was owned by Aerotech, in its possession, and not away from the insured's premises. While only one of these conditions suffices to exclude coverage, Avemco argues that all three are present here.

The Hills and Faulkner, in opposition to Avemco's motion, argue that there are three distinct forms of coverage: bodily injury under Coverage A; property damage arising out of aircraft products hazard under Coverage B; and grounding if the loss arose out of the aircraft products hazard under Coverage C. The argument continues that here there is coverage under Coverage A because there was bodily injury.

■ This first line of defense propounded by the Hills and Faulkner must fail. Although this Court recognizes that under Vermont law the policy language is to be strictly construed against the insurer, *Simpson v. State Mutual Life Assurance Co. of America,* 135 Vt. 554, 382 A.2d 198,

poration organized and with its principal place    of business in Illinois.

199 (1977), the insurance contract "must receive practical, reasonable, fair interpretation, consonant with the apparent object and intent of the parties." *Town of Troy v. American Fidelity Co.*, 120 Vt. 410, 143 A.2d 469, 474 (1958). This Court rules that the policy language here is not so ambiguous as to require an interpretation in favor of the insured. The reference to bodily injury in the ensuing three sentences below the line beginning "COVERAGE B" only makes sense when interpreted to refer back to the Coverage A language. If the Hills and Faulkner were correct, there would be no reason to include bodily injury arising out of an aircraft products hazard and caused by an occurrence under the property damage Coverage B section since bodily injury is not provided for within the definition of property damage. Property damage is defined as "physical injury to or destruction of tangible property which occurs during the Policy Period, including loss of use thereof at any time resulting therefrom." Avemco Agreement, at 1. The reference to bodily injury, therefore, only makes sense when it is read to refer back to Coverage A. Thus, only bodily injury arising out of the aircraft products hazard is covered under the Avemco Agreement. The confusion that the Hills and Faulkner aver to, if confusion there be, is created because Avemco failed to skip a line in between the line beginning "COVERAGE B" and the ensuing four sentences. *Cf.* 2 R. Long, *The Law of Liability Insurance* § 11.01, at 11–4 to 5 (1987) (discussing generic products liability policies and setting forth nearly identical language as in the Avemco Agreement but with a double space between Coverage B and the succeeding paragraph). Were there a comma between the Coverage A language and Coverage B and no use of the word "or" perhaps the Hills' and Faulkner's position would be stronger. Such is not the case, however.

The Hills' and Faulkner's second argument is that Aerotech is covered nonetheless because the bodily injury did in fact arise out of the aircraft products hazard. Again, their position fails, this time because the accident does not satisfy the definition of aircraft products hazard. By Faulkner's own admissions, as president of Aerotech, "On or about September 16, 1983, Ray Hill crashed into the ground at the Katama Airport, Edgartown, Massachusets, while using the parasail *owned* and manufactured by Aerotech." Answer of Faulkner, at ¶ 13 (emphasis added). Ownership of the aircraft product is outside the policy coverage. Such an admission is deemed conclusive until withdrawn or amended. *McCormick on Evidence* § 265, at 780 (1984). Faulkner has not sought leave to do either. *See* Mass.Gen. Laws ch. 231, § 87 (1984) ("In any civil action pleadings shall not be evidence on the trial, but the allegations therein shall bind the party making them"). Further, at this stage, the other parties have a duty to come forward with some evidence, not merely arguments that a fact *may* be in dispute, but evidence in compliance with Fed.R.Civ.P. 56(e), in order to prevent Avemco from being awarded summary judgment on this issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). None of the parties have carried their burden.

■ This Court's decision as to the interpretation of the scope of the policy coverage is also supported by the indisputable fact that Aerotech was in possession of the parasail at the time of the accident, thereby excluding coverage since the incident was not within the definition of aircraft products hazard. The Hills' and Faulkner's assertion that Mr. Hill himself was in possession borders on the frivolous. Possession is a legal term of art; it does not refer to mere physical control over an object in a temporal sense.

> [L]egal possession follows the legal title.... *[T]emporary care of property does not rise to the dignity of 'possession' within the ordinarily accepted legal meaning of that term.* Custody of [personal property] ... implies temporary physical control merely, and does not connote domination, ... as does possession in its full significance.... Possession is inclusive of custody, but custody is not tantamount to possession.

*Canadian Radium & Uranium Corp. v. Indemnity Insurance Co.*, 348 Ill.App. 171, 108 N.E.2d 515, 518 (1952) (quoting *Budelman v. American Ins. Co.*, 297 Ill. 222, 227, 130 N.E. 513, 515 [1921] and *Gibson v. St. Paul Fire and Marine Ins. Co.*, 117 W.Va. 156, 184 S.E. 562, 563 [1936]); 7A J. Appleman, *Insurance Law and Practice* § 4508.01, at 346–49 (1979) ("[w]here [a] manufacturer ... retains title, rents an article to another, or ships to another for further processing, or retains possession as a bailee it has been held that the requirement of 'relinquishment of possession' has not been met.") (footnotes omitted); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003, 104 S.Ct. 2862, 2873, 81 L.Ed.2d 815 (1984) ("[the term property] ... denote[s] the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it.") (quoting *United States v. General Motors Corp.*, 323 U.S. 373, 377–78, 65 S.Ct. 357, 359, 89 L.Ed. 311 [1945]). Products liability insurance policies are designed to apply where the "bodily injury or property damage ... (1) occur[s] away from the premises *and* (2) the insured ... relinquished possession." 7A J. Appleman, *supra* p. 10, § 4508.01, at 345 (emphasis added) (footnote omitted). Be-cause Aerotech never relinquished possession but instead remained the legal owner and possessor of the parasail, the Avemco Agreement affords no protection for Aerotech's putative liability in the accident lawsuit. Accordingly, summary judgment is granted in favor of Avemco.[6]

### 3. Counterclaims of Faulkner

■ Avemco has also moved for summary judgment on the counterclaims filed by defendant Faulkner. Faulkner claims that Avemco engaged in unfair or deceptive trade practices, misrepresented the terms of the policy, breached its insurance contract with Aerotech, and acted negligently in the course of its insurance representation of Aerotech. Summary judgment is granted on so much of the counterclaim that alleges breach of contract, i.e., Counts III and IV. The motion as to the counts alleging fraud, unfair practices, misrepresentation, and negligence is denied without prejudice to its renewal after further discovery.[7]

### B. *Illinois Union Policy Coverage*

#### 1. Choice of Law

For the reasons articulated above the Court rules that under Massachusetts

---

**6.** This Court need not and therefore does not address whether the other requirement, i.e., that the injury occur away from the premises, was satisfied under the terms of the Avemco Agreement. *But compare infra* pp. 41–43 (interpreting Illinois Union policy). The Court does note that had the defendants somehow managed to clear this hurdle and the possession/owner hurdle they would nonetheless appear to be foreclosed from coverage due to policy exclusion # 3 which states: "This insurance does not apply to liability arising out of the handling or use of or the existence of any condition in *aircraft products* owned by, loaned to, or, except with respect to *aircraft loss of use* in possesion or control of the insured" (emphasis in original). "Aircraft products" is defined in the definitional section as "an aircraft or any component part thereof or article used in connection therewith, which is manufactured, distributed, sold or handled by an *insured* in the course of the *named insured's* business ..." (emphasis in original). While the defendants dispute, though solely by way of argument, *see supra* p. 36, that the parasail was manufactured, distributed or sold by Aerotech, it was certainly handled by Aerotech during the course of its ownership, possession, and control at the time of the accident. This exclusion by its plain meaning forecloses coverage. *See Clark v. Cooperative Fire Insurance Association of Vermont*, 141 Vt. 321, 448 A.2d 155, 156 (1982) (coverage not extended to perils not named; insurer not deprived of benefit of unambiguous provision).

**7.** The Hills additionally contend that even if Avemco has no duty to indemnify Aerotech, it nonetheless has a continuing duty to defend. Although it is black letter law that the duty to defend is broader than an insurer's obligation to respond in damages, *Vermont v. Glens Falls Ins. Co.*, 132 Vt. 97, 315 A.2d 257, 258 (1974), that duty may be extinguished where the clear language of the liability policy does not cover the risk run by the insured. *Id*, 315 A.2d at 259; *Mallory v. Vermont Mutual Fire Ins. Co.*, 126 Vt. 237, 226 A.2d 901, 903 (1967); *cf. Sterilite Corp. v. Continental Casualty Co.*, 17 Mass.App.Ct. 316, 323, 458 N.E.2d 338 (1983) ("A declaratory action, in which the necessary interests are represented, may serve for the demonstration" that as matter of fact "the third party cannot establish a claim within the insurance"). Such is the case here and therefore Avemco's duty to defend is also extinguished.

choice-of-law principles the Illinois Union insurance policy is governed by Vermont law.

### 2. Scope of the Coverage

The Illinois Union insurance policy is described by the parties as an "Owner's, Landlord's, and Tenant's policy" ("OLT policy"). Such policies must be distinguished from products liability policy coverage. As stated earlier, products liability coverage "contemplates the product being off the insured's premises when the occurrence takes place." 2 R. Long, *supra* p. 10, § 11.02, at 11–15 (footnote omitted). Just the opposite is true for the typical OLT policy. In the instant policy, however, Illinois Union afforded somewhat greater coverage than the typical policy. The policy provides that

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
> B. property damage
>
> to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and *all operations necessary or incidental thereto,* and the

company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....

Illinois Union Policy, at 2 (emphasis added). The parties, in their briefs,[8] joust over how this Court should characterize the locus of the accident and how this Court should interpret the terms "all operations necessary or incidental thereto."

For its part, Illinois Union first argues that Mr. Hill's accident occurred off the insured premises of Aerotech's Vermont headquarters and nearby airfield. It contends that it is not responsible for covering this accident since it is only liable to cover off-premises accidents where there is "spectator liability." See Illinois Union policy, at 3 [9] and at 6.[10]

Illinois Union also presses that this Court should rule in its favor because Aerotech's actions were not operations necessary or incidental to its insured premises. It relies primarily upon *Parliament Ins. Co. v. Bryant,* 380 So.2d 1088 (Fla.App.1980), *cert. denied,* 388 So.2d 1110 (Fla.1980), wherein the court held that a prospective purchaser of a boat that crashed during a demonstration miles away from the boatyard was not covered in the OLT policy, and *Harvey v. Mr. Lynn's, Inc.,* 416 So.2d

---

**8.** The parties both submit this matter to the Court as a simple matter of contract interpretation. "This belief is a remnant of a primitive faith in the inherent potency and inherent meaning of words." *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., Inc.,* 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 643–44 (1968) (Traynor, C.J.) (footnotes omitted). Hill argues in part that the contract suffers from a mutual mistake because the parties expressly intended to cover this exact unfortunate occurrence. Unfortunately for his argument, he submits no extrinsic evidence, e.g., in affidavit form, to support this position. "Although extrinsic evidence is not admissible [under the parol evidence rule] to add to, detract from, or vary the terms of a written contract, these terms must first be determined before it can be decided whether or not extrinsic evidence is being offered for a prohibited purpose. The fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms. That possibility is not limited to contracts whose terms have acquired a particular meaning by trade usage, but exists

whenever the *parties' understanding* of the words used may have differed from the judge's understanding." *Id.* 69 Cal.Rptr. at 565, 442 P.2d at 645 (footnote omitted) (emphasis added). The late Chief Judge Traynor's remarks set forth the proper standard for Vermont law as well.

**9.** The declarations page provides coverage for the insured premises at Barnard, Vt. and Post Mills. Under the description of hazards, the premises-operations listed are: "Parasail Demonstration—on premises—including instruction" and "Parasail Demonstration—off premises— Excluding Instruction."

**10.** Limitation Endorsement # 4 provides:
> In consideration of a reduced premium charge, it is understood and agreed that coverage under this policy for off-premises exposure is limited to spectator liability. Off-premises demonstration excludes liability arising from Bodily Injury or death to students or participants.

Illinois Union policy, at 4.

960 (La.App.1982) (model injured at fashion show away from insured premises not covered under necessary or incidental clause).

The Hills and Faulkner fend off Illinois Union's attack with a two-part defense. First, they contend that the demonstration at Katama Airport was necessary or incidental to the operations of the insured premises in Vermont, arguing essentially that it was intended from the outset that demonstrations were required outside the small Vermont airport for marketing and instructional purposes. They reject Illinois Union's authority as inapplicable since those decisions involved the interpretation of building liability policies and not policies covering insured premises as well as operational coverage as is presented here. In support of their own position they cite to cases wherein courts have held that necessary or incidental operations clause applied to cover injuries arising off-premises from articles originating on-premises that were likely to leave the premises. *See, e.g., Calkins v. Merchants Mutual Ins. Co.*, 399 N.Y.S.2d 811, 59 A.D.2d 1052 (1977) (sale of steel drum within necessary or incidental operations to garage business); *Sun Ins. Co. of New York v. Hamanne*, 113 N.H. 319, 306 A.2d 786 (1973) (renting of defective machine that caused damage off the premises within paint store's OLT coverage under necessary or incidental clause). They also contend that even if the operation at Katama Airport is ruled to be off-premises, it nonetheless should be covered because of the ambiguities patent in the off-premises coverage and the exclusions therefrom.

Illinois Union's policy is not a typical OLT policy. As Illinois Union correctly notes, the typical OLT policy "does not cover a liability arising from the insured's activity in the building." 11 *Couch on Insurance* § 44.379, at 551–52 (2d ed. 1982). One commentator is even more directly on point, observing: "The policy typ-

ically excludes ... occurrences arising out of the ownership maintenance or use of an ... aircraft...." 2. R. Long, *supra* p. 10, § 10.21, at 10–110. The Illinois Union policy, however, specifically covers activities beyond the normal ownership, maintenance, or use of the premises. It provides coverage for *activities* on the premises, including aircraft occurrences. Most remarkably, Illinois Union also intended to provide at the very least some minimal protection for off-premises demonstrations. On the declarations page Illinois Union includes coverage for "Parasail Demonstrations off-premises—Excluding Instruction." At a minimum, this coverage extends to "spectator liability." [11] This is a significant expansion of coverage over the typical circumscribed "insured premises" OLT policy as argued by Illinois Union.

The on-premises coverage includes any type of bodily injury, at a $4,000 minimum, due to instruction. The operative phrase for this declaratory judgment action, of course, is operations "necessary or incidental" to the insured premises, in this case Barnard, Vermont and Post Hills, Vermont. Owing to the silence of the courts of Vermont on the interpretation of this clause, this Court is left with sundry caselaw from various states that may be marshalled to support either party's position.[12] The cases turn on the intentions of the parties as evidenced by the specific language employed. As the parties here have presented no evidence of their specific intentions or understandings with respect to their agreement, *see supra* note 7, this Court turns to the language used.

The term "necessary" is capable of a myriad of meanings. Its synonyms range from "needy," "prerequisite," and "required" to "essential," "vital," and "indispensable." *The American Heritage Dictionary* 834 (Second College Ed. 1985); *Webster's New Collegiate Dictionary* 761

---

**11.** *See supra* note 10.

**12.** Illinois Union would have this Court "match the colors of the case at hand against the colors of many sample cases spread out upon their desk. The sample nearest in shade supplies the applicable rule." B. Cardozo, *The Nature of the*

*Judicial Process* 20 (1921). Unfortunately for them, none of the shades is sufficiently close or convincing to supply the rule and somewhat more is required in terms of analysis to arrive at a just decision.

(1980). The elusiveness of the word is placed in proper context in *Black's Law Dictionary* 928 (5th ed. 1979):

> This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought.... It may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought. [Citation omitted.]

Given the broad coverage that Illinois Union's OLT policy provides, this Court cannot say that the term "necessary" does not extend to the circumstances presented here.

Illinois Union would have this Court rule that even if the demonstration involving Mr. Hill at Katama Airport were a "necessary" [13] operation, it is nonetheless excluded by the Illinois Union OLT policy's limitation endorsement # 4. The off-premises demonstration liability is limited to "spectator liability" and "excludes liability for Bodily Injury or death to students or participants." Limitation Endorsement # 4, Illinois Union Policy, at 4.

Nowhere in the policy are the terms students or participants defined. The Hills and Faulkner argue that this raises some ambiguity as to the application of this exclusion to Mr. Hill, e.g., does participants only apply to individuals, not enrolled students, who provide some consideration for a Aerotech demonstration? Is the exclusion meant to cover any person who is in any way associated with a demonstration, including a nonpaying journalist on assignment? Therefore, they argue, "[s]ince insurance contracts are contracts of adhesion, [this Court is to] resolve [such] ambiguities against the insurers and the insured usually [ought be] given an intepre-

tation that is most favorable to him." 7A J. Appleman, *supra* p. 12, § 4493.02, at 76 (discussing breadth of necessary or incidental clause) (footnote omitted); *Town of Troy v. American Fidelity Co.*, 120 Vt. 410, 143 A.2d 469, 474 (1958).

■ While the word "participants," standing alone, might be somewhat ambiguous, this policy clearly limits off-premise liability to spectators and, on the present record, Mr. Hill, while parascending, was assuredly not a spectator as that word is ordinarily used. The standard rule—applied in Vermont—requiring that ambiguities in an insurance contract be construed against the insurer cannot be extended to ride roughshod over the plain and ordinary usage of commonly understood words. Thus, Illinois Union is likewise entitled to summary judgment here.

Accordingly, the motions of the Hills and Faulkner for summary judgment are DENIED and the motions of Avemco and Illinois Union for summary judgment are ALLOWED. To avoid payment by the insurance companies of further legal fees for the defense of this action (which the insurance companies will be unable to recover) it is in the interests of justice that a partial judgment enter immediately declaring that neither Avemco nor Illinois Union have a duty to defend or indemnify Aerotech in the circumstances here presented.

---

13. Because of this Court's ruling on the "operations necessary" portion of the clause, it is unnecessary to reach the seemingly lesser inclusive term "incidental."